ORIGINAL

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF TEXAS**
**DALLAS DIVISION**

U.S. DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
**FILED**

NOV 1 6 2010

CLERK, U.S. DISTRICT COURT
By _____
        Deputy

| | |
|---|---|
| JOSEPH JOHNSON, JR.<br>2600 BRINKLEY ROAD PH 1005<br>FORT WASHINGTON, MD  20744<br>(240) 605-9921 | §<br>§<br>§<br>§<br>§ |
| Plaintiff, | §<br>§ |
| Vs. | § CIVIL ACTION NO._____ |
| | § |
| ARNE DUNCAN, Secretary of the United States<br>Department of Education<br>SERVE: U.S. ATTORNEY GENERAL<br>950 PENNSYLVANIA AVENUE, NW<br>WASHINGTON, DC  20530 | §<br>§<br>§<br>§<br>§ |
| | § |
| And | § |
| | § |
| AFFILIATED COMPUTER SERVICES, INC.<br>SERVE: CORPORATION SERVICE COMPANY<br>211 EAST 7th STREET SUITE 620<br>AUSTIN, TX 78701 | §<br>§<br>§<br>§<br>§ |
| Defendants. | §<br>§ |

**3-10CV2333-B**

## ORIGINAL COMPLAINT AND REQUEST FOR DECLARATORY RELIEF

### Introduction

1.      Plaintiff brings this action for a declaratory judgment and other legal and

equitable relief arising out of the Defendants' May 10, 2010 decision denying the

Plaintiff's application for a discharge of his federally-guaranteed student loan.

In Section 428(c) of the Higher Education Act Amendments of 1992, P.L. No.

102-325 (July 23, 1992)(codified at 20 U.S.C. §1087(c))(hereafter "HEA"), Congress

directed the Secretary of Education to discharge the loans of borrowers under the federal

student loan program who were falsely certified as eligible students by the school

receiving the loan funds. Plaintiff is an individual who was falsely certified by the University of Maryland University College ("UMUC") and is entitled to a discharge of his loans under the statute, but has been denied relief by the Defendants. Plaintiff seeks, inter alia, a declaratory judgment (i) directing the Defendants to discharge the plaintiff's loans, including reimbursing the plaintiff and taking all necessary steps to remove the penalties and disqualifications associated with any default on the student loans.

## JURISDICTION AND VENUE

2.      This case arises under the Higher Education Act, 20 U.S.C. §1087(c), and the Administrative Procedure Act, 5 U.S.C. §§701, *et seq*. This Court has jurisdiction under 28 U.S.C. §1331, §1346(a)(2), §1361 and 20 U.S.C. §1080 and §1082(a)(2).

This Court has supplemental jurisdiction to hear the claims against Defendant Affiliated Computer Services, Inc., ("ACS") pursuant to 28 U.S.C. §1367(a) because the claims in this case arise from the same case or controversy. Defendant ACS is also joined as a defendant pursuant to Rule 19(a)(2) of the Federal Rules of Civil Procedure. Jurisdiction is also proper against Defendant ACS pursuant to 28 U.S.C. §1343. With respect to the Plaintiff's request for declaratory relief, jurisdiction is proper in this Court under 28 U.S.C. §2201.

3.      Venue is proper in this Court pursuant to 28 U.S.C. §1391, *et seq*. in that Defendants maintain offices, conduct business and reside in this district.

## PARTIES

4.      Plaintiff was a student at the UMUC in College Park, Maryland and signed federally guaranteed student loans, including Federal Family Education Loans (FFEL), the proceeds of which were paid directly to UMUC.

2

5.      Defendant Arne Duncan is the Secretary of Education and is sued in his official capacity as head of the United States Department of Education ("Secretary"). The United States Department of Education is an agency within the meaning of the federal Administrative Procedure Act, 5 U.S.C. §§701, *et seq.*

6.      Defendant ACS is a corporation incorporated in the State of Delaware, and has a principal place of business in the State of Texas. Service of Process may be affected by delivering a copy of the summons and complaint to the president, vice president, or the registered agent, or to an officer, a managing or general agent, or to any other agent authorized by appointment or by law to receive service of process at 2828 North Haskell Avenue, Dallas, Texas 75204.

## FACTUAL BACKGROUND

### A.      The Student Loan Program

7.      The Higher Education Assistance Act authorizes a federally-funded program of guaranteed student loans under which guaranty agencies, operating under requirements established by statute, insure loans made to eligible students to attend eligible institutions, and the Secretary of Education reinsures guaranty agencies for losses on the loans caused by the borrowers' default. 20 U.S.C. §1071, *et seq.*

### B.      The Educational Training Program

8.      UMUC was an institution that operated in College Park, Maryland and offered a "paralegal studies" program.

9.      The UMUC "paralegal studies" program was a '60-credit certificate' (and *not a degree*) program that trained students to be a Paralegal and at the completion of the program students are able to obtain employment as a Paralegal. *See Exhibit A.*

3

10.     The "paralegal studies" program focuses on the legal concepts, procedures and skills used in a wide variety of legal environments.

11.     The program addresses the organization, functions and processes of institutions in the U.S. legal system, roles and issues in the paralegal field, legal ethics and selected specialty areas. The curriculum emphasizes important skills, including legal analysis, communication, legal research, computer competence, legal drafting, investigation, organization and specialized legal skills.

12.     Students are awarded a 'certificate' in paralegal studies upon successful completion of a 10-course sequence of four required courses and six elective courses in paralegal studies, plus an additional 30 semester hours of general education courses. Upon completion of the 'paralegal studies' program, students also receive information about prospects for positions as *legal assistants* in government and in private firms.

13.     The 'paralegal studies' curriculum requires 10 courses in the following sequence:

   a.     Four required courses (to be taken in order):

          PLGL 101     Introduction to Law for the Paralegal (3)
          PLGL 200     Techniques of Legal Research (3)
          PLGL 201     Legal Writing (3)
          PLGL 204     Legal Ethics/Law-Office Systems (3)

   b.     One prerequisite course, chosen from one of the five areas of specialization such as commercial law, family law, government practice, litigation or tax law.

   c.     Three elective courses in the chosen area of specialization.

   b.     Two more elective courses, chosen from an area of specialization.

*See Exhibit B.*

### C.     Plaintiff's Loans

14.     Beginning in the fall of 1993 and continuing until the spring of 1996, the Plaintiff was admitted as an undergraduate student at the UMUC. While the Plaintiff was admitted at UMUC, the Plaintiff was never enrolled in a degree program.

15.     On September 7, 1993, the Plaintiff enrolled in the UMUC paralegal studies program to obtain a 'certificate' in paralegal studies.

16.     At the time the Plaintiff was admitted to UMUC, the Plaintiff had a criminal record.

17.     UMUC did not inquire of the Plaintiff's criminal record, nor was the Plaintiff required by UMUC to disclose any of this information prior to the Plaintiff's enrollment in the UMUC paralegal studies program.

18.     UMUC arranged for the Plaintiff to sign loan documents for federally guaranteed student loans, including Federal Family Education Loans (FFEL) to pay tuition and fees for the UMUC paralegal studies program. The loans were disbursed between September 7, 1993 and May 12, 1996.

19.     As of May 13, 2004, Plaintiff had a total of $18,000 in defaulted subsidized and unsubsidized loans due to Sallie Mae. *See Exhibit C.*

20.     Plaintiff also had an additional $3,363.93 in a defaulted Perkins loan due to UMUC.

21.     Based upon information and believe, the Defendants' Direct Loan Servicing Center alleged that the Plaintiff also owed subsidized and unsubsidized Direct Loans in the amount of $5,944.04 from UMUC for the spring of 1996.

22.     On June 18, 2004, the federally guaranteed student loans and FFEL loans were consolidated under the William D. Ford Federal Direct Loan Program ("FFDLP"). Based upon information and belief, the total outstanding principle and interest balance after the loans were consolidated was $30,417.09.

23.     At the time the loans were consolidated, the Defendants' Direct Loan Consolidation Center overpaid the Sallie Mae defaulted loans and, based upon information and belief, on June 21, 2004, Sallie Mae returned $3,238.97 as a refund to the Defendants' Direct Loan Consolidation Center. The Defendants' Direct Loan Consolidation Center however has failed to adjust the outstanding principle and interest balance of the consolidated loan to reflect the refunded overpayment.

24.     Further, prior to the time the loans were consolidated, UMUC refunded a total of $2,556.00 to the Defendants between January 23 and January 25 of 1996. The Defendants however has also failed to adjust the outstanding principle and interest balance of the loan to reflect this refund. *See Exhibit D.*

25.     Based upon further information and belief, Defendant ACS contracted with the Department of Education to service the Plaintiff's consolidated loans and earns compensation for servicing the Plaintiff's consolidated loans. To date, the Defendants have collected $2,977.32 from the Plaintiff on the consolidated loans.

**D.**     False Certification Discharge Requirements

26.     A year prior to the plaintiff's enrollment in UMUC, in 1992, Congress mandated that if a student's eligibility to borrow was falsely certified by the school, and the borrower received the loan on or after January 1, 1986, then the Secretary *shall*

discharge the borrowers' liability on the loan (including interest and collection fees) by repaying the amount of the loan. 20 U.S.C. §1087(c).

27.      The regulation that governs the discharge of loans consolidated under the FFDLP is 34 C.F.R. §685.215(a)(1)(iii).

28.      The Secretary considers a student's eligibility to borrow to have been falsely certified by the school if the school certified the eligibility of a student who, because of a physical or mental condition, age, *criminal record*, or other reason accepted by the Secretary, would not meet the requirements for employment (in the student's State of residence when the loan was originated) in the occupation for which the training program supported by the loan was intended.

29.      The Secretary provides a form that a borrower must complete and submit to be considered for a discharge of a student loan based on false certification (disqualifying status). In order to qualify for discharge under this section, the borrower is required to submit to the Secretary a written request and a sworn statement, and the factual assertions in the statement must be true. The statement need not be notarized but must be made by the borrower under penalty of perjury. The requirements and terms for the discharge are preprinted on the back of the form and require that:

    a.   You received Direct Loan or FFEL Program loan funds on or after January 1, 1986, to attend (or, if you are a PLUS borrower, for the student to attend) the school you identify in Section 2 of the form. Those funds were either received by you directly, or applied as a credit to the amount owed to the school.

    b.   At the time the school certified or originated your loan, you (or, for PLUS borrowers the student) were unable to meet the legal requirements for employment in your state of residence (or, for PLUS borrowers the student state of residence) in the occupation for which the program of study was intended because of age, a physical or mental condition, *criminal record* or other reason.

c.  You will provide, upon request, testimony, a sworn statement, or other documentation reasonably available to you that demonstrates to the satisfaction of the Department or its designee that you meet the qualifications for loan discharge based on false certification (disqualifying status), or that supports any representation that you make on the form or on any accompanying documents.

d.  You agree to cooperate with the Department or its designee regarding any enforcement actions related to your request for loan discharge.

e.  You assign and transfer to the Department any right to a refund on the discharged loans that you may have from the school you identify in Section 2 of the form and/or any owners, affiliates, or assigns of the school, and from any party that may pay claims for a refund because of the actions of the school, up to the amounts discharged by the Department on your loan(s).

30.  The form also provides a section defining key terms used in the form. For example:

a.  The Federal Family Education Loan (FFEL) Program includes Federal Stafford Loans (both subsidized and unsubsidized), Federal Supplemental Loans for Students (SLS), Federal PLUS Loans, and Federal Consolidation Loans.

b.  The William D. Ford Federal Direct Loan (Direct Loan) Program includes Federal Direct Stafford/Ford Loans (Direct Subsidized Loans), Federal Direct Unsubsidized Stafford/Ford Loans (Direct Unsubsidized Loans), Federal Direct PLUS Loans (Direct PLUS Loans), and Federal Direct Consolidation Loans (Direct Consolidation Loans).

c.  The holder of a borrower's FFEL Program loan(s) may be a lender, a guaranty agency, or the U.S. Department of Education (the Department). The holder of a borrower's Direct Loan Program loan(s) is the Department.

d.  Loan discharge due to false certification (disqualifying status) cancels the obligation of a borrower (and endorser, if applicable) to repay the remaining balance on a FFEL Program or Direct Loan Program loan, and qualifies the borrower for reimbursement of any amounts paid voluntarily or through forced collection on the loan. For consolidation loans, only the amount of the underlying loans (the loans that were consolidated) that were used to pay for the program of study listed in Item 6 will be considered for discharge. The loan holder reports the discharge to all credit reporting agencies to which the holder previously reported the status of the loan.

e.  The student refers to the student for whom a parent borrower obtained a Federal PLUS Loan or Direct PLUS Loan.

f.  Program of study means the instructional program leading to a *degree or certificate* in which you (or, for parent PLUS borrowers, the student) were enrolled.

g.  Certification and origination are steps in a school's processing of a loan.  In the FFEL Program, a loan is certified when the school signs a loan application or submits an electronic loan record to the lender or guaranty agency after determining that the borrower meets all loan eligibility requirements.  In the Direct Loan Program, a loan is originated when the school creates an electronic loan origination record after determining that the borrower meets all loan eligibility requirements.

h.  Third party refers to any entity that may provide reimbursement for a refund owed by the school, such as a State or other agency offering a tuition recovery program or a holder of a performance bond.

*See Exhibit E.*

31.  There is no limitation on the number of times a borrower may apply for a false certification (disqualifying status) discharge and the Defendants' website states that the frequency is: "If you think you are eligible for this type of loan discharge". *See Exhibit F.*

**E.  Plaintiff's Requests for Discharge**

32.  Based upon information and belief, Defendant ACS, as the servicer of the Plaintiff's consolidated loans and, under the Secretary's regulations, is responsible for processing borrower's requests for cancellation or discharge of loans.

33.  Plaintiff previously submitted a request for discharge of his consolidated loans to the Defendants under the false certification provisions of 20 U.S.C. §1087(c), including a sworn statement showing that he met the statutory requirements for discharge based on false certification (disqualifying status) because the school certified the eligibility of the Plaintiff who because of his *criminal record* would not meet the

requirements for employment as a 'Paralegal' for which the UMUC "paralegal studies"
training program supported by the loan was intended.

34.     The Defendants acknowledged that the Higher Education Act of 1965, as
amended (HEA), established discharge requirements under the circumstances the Plaintiff
described in his previous request for discharge of the loans but at that time denied the
Plaintiff a discharge of the loans on the ground that the Plaintiff did not meet the criteria
for discharge on the basis of false certification (disqualifying status) because: "there are
no records that indicate you were enrolled in a training program that specifically and
exclusively prepared you for employment in law enforcement or as a paralegal, nor were
you enrolled in law school."

35.     This determination meant that had the Plaintiff submitted records with his
previous request for discharge of his consolidated loans that indicated that he was
enrolled in a training program that prepared him for employment in either law
enforcement or as a paralegal, or if the Plaintiff had been enrolled in law school when the
loans were originated, the Plaintiff would have been entitled to a discharge of the loans.

36.     At the time the Plaintiff submitted the previous discharge applications, the
Plaintiff was not required by regulation, statute or the Secretary of Education to submit
records that indicated that he was enrolled in a training program that specifically and
exclusively prepared him for employment in law enforcement or as a paralegal. Also,
before the Defendants denied the Plaintiff a discharge of the loans, the Defendants never
requested that the Plaintiff submit or obtain records that indicated that he was enrolled in
a training program that specifically and exclusively prepared him for employment in law

enforcement or as a paralegal, nor did the Defendants request or obtain this information themselves before previously denying the Plaintiff a discharge of the student loans.

37.     On April 14, 2009, the Plaintiff requested that the Secretary reconsider his previous application for a discharge of his loans because he was not afforded the opportunity to submit records that indicated that he was enrolled in a training program that specifically and exclusively prepared him for employment in law enforcement or as a paralegal before his previous request for a discharge was denied. *See Exhibit G.*

38.     By agency decision dated December 11, 2009, the Secretary advised the Plaintiff's attorney that if the Plaintiff had additional documentation that he believed supported his request for a discharge of the loans and that he did not provide at the time the agency denied his request, that the Plaintiff should submit that documentation. *See Exhibit H.*

39.     To establish entitlement to discharge, the Secretary required that the Plaintiff submit documentation that indicated that he was enrolled in a training program that prepared him for employment in either law enforcement or as a paralegal, or show that he was enrolled in law school.

40.     Beginning on December 26, 2009 and, continuing until June 3, 2010, the Plaintiff submitted other requests to the Defendants to discharge the consolidated loans on the basis the school certified the eligibility of the Plaintiff who because of his *criminal record* would not meet the requirements for employment as a 'Paralegal' for which the UMUC "paralegal studies" training program supported by the loan was intended.

41.     The Plaintiff provided supporting documentation along with a sworn affidavit as required by 34 C.F.R. §685.215(a)(1)(iii) and 20 U.S.C. §1087(a) to the

Defendants showing that from the fall of 1993 through the spring of 1996 he was enrolled in the UMUC "paralegal studies" program and that the "paralegal studies" program was a "60-credit certificate" training (and *not a degree*) program that "specifically and exclusively prepared students for employment as a Paralegal." *See Exhibit I.*

42.     By notice dated May 10, 2010, the Defendants again denied the Plaintiff's request for discharge of the consolidated loans. The notice did not specify a basis for the denial of the Plaintiff's request for a false certification (disqualifying status) discharge, nor did it advise the Plaintiff of how to proceed after receiving the notice.

43.     The notice simply stated that the Defendants "will continue to hold you fully responsible for repaying your loan." *See Exhibit J.*

## CLAIMS FOR RELIEF

### First Claim for Relief
(The May 10, 2010 Decision Made By Defendants Is Arbitrary, Capricious, and Not Authorized By Law)

44.     The allegations contained in paragraphs 1 through 43 of this complaint are adopted and incorporated by reference herein.

45.     To establish entitlement to discharge, the Plaintiff was required to submit documentation to the Defendants that indicated that he was enrolled in a training program that prepared him for employment in either law enforcement or as a paralegal, or show that he was enrolled in law school.

46.     Beginning on December 26, 2009 and, continuing until June 3, 2010, the Plaintiff submitted other requests to the Defendants to discharge the consolidated loans on the basis the school certified the eligibility of the Plaintiff who because of his *criminal*

*record* would not meet the requirements for employment as a 'Paralegal' for which the UMUC "paralegal studies" training program supported by the loan was intended.

47.   The Plaintiff provided supporting documentation along with a sworn affidavit as required by 34 C.F.R. §685.215(a)(1)(iii) and 20 U.S.C. §1087(a) to the Defendants showing that from the fall of 1993 through the spring of 1996 he was enrolled in the UMUC "paralegal studies" program and that the "paralegal studies" program was a "60-credit certificate" training (and *not a degree*) program that "specifically and exclusively prepared students for employment as a Paralegal."

48.   By notice dated May 10, 2010, the Defendants again denied the Plaintiff's request for discharge of the consolidated loans and told the Plaintiff that the Defendants "will continue to hold you fully responsible for repaying your loan."

49.   The Defendants' May 10, 2010 denial of the plaintiff's request for a discharge of the Plaintiff's consolidated loans under the false certification (disqualifying status) provision of 20 U.S.C. §1087(a) is arbitrary, capricious, and not authorized by law and must therefore be set aside as required by 5 U.S.C. §706 because the Plaintiff established by affidavit and supporting documentation that he was enrolled in a training program that prepared him for employment as a paralegal.

50.   The Plaintiff also satisfied the statutory conditions for discharge of the consolidated loans under 20 U.S.C. §1087(c).

51.   The Defendants however have failed and refused to perform their duty to discharge the Plaintiff's consolidated loans under 20 U.S.C. §1087(c).

52.   The Defendants have unreasonably delayed discharging the Plaintiff's consolidated loans under 20 U.S.C. §1087(c).

that prepared him for employment in either law enforcement or as a paralegal, or show that he was enrolled in law school.

59. Beginning on December 26, 2009 and, continuing until June 3, 2010, the Plaintiff submitted other requests to the Defendants to discharge the consolidated loans on the basis the school certified the eligibility of the Plaintiff who because of his *criminal record* would not meet the requirements for employment as a 'Paralegal' for which the UMUC "paralegal studies" training program supported by the loan was intended.

60. The Plaintiff provided supporting documentation along with a sworn affidavit as required by 34 C.F.R. §685.215(a)(1)(iii) and 20 U.S.C. §1087(a) to the Defendants showing that from the fall of 1993 through the spring of 1996 he was enrolled in the UMUC "paralegal studies" program and that the "paralegal studies" program was a "60-credit certificate" training (and *not a degree*) program that "specifically and exclusively prepared students for employment as a Paralegal."

61. By notice dated May 10, 2010, the Defendants again denied the Plaintiff's request for discharge of the consolidated loans.

62. In evaluating the plaintiff's application for a false certification (disqualifying status) discharge that the Plaintiff submitted to the Defendants between December 26, 2009 and June 3, 2010, the defendants applied unpublished additional criteria and more restrictive standards than set forth in 34 C.F.R. §685.215(a)(1)(iii) and 20 U.S.C. §1087(a) because neither the statute nor the Secretary's regulation required that borrowers provide documentation proving that they were enrolled in a training program that specifically and exclusively prepared them for employment in the

53.     The Plaintiff has been irreparably injured by the failure of the Defendants

to perform their obligations under 20 U.S.C. §1087(c), and by the unreasonable delay in

discharging the Plaintiff's consolidated loans.

**Second Claim for Relief**
(Constitutional Due Process Challenge to Defendants' Procedures for
Processing Requests for False Certification (Disqualifying Status) Discharge)

54.     The allegations contained in paragraphs 1 through 53 of this complaint are

adopted and incorporated by reference herein.

55.     The procedures implemented by the Defendants for processing requests

for false certification (disqualifying status) discharge applies unpublished additional

criteria and more restrictive standards than set forth in 34 C.F.R. §685.215(a)(1)(iii) and

20 U.S.C. §1087(a).

56.     Specifically, the Defendants provide a form a borrower must complete and

submit to be considered for a discharge of a student loan based on false certification

(disqualifying status). The requirements and terms for the discharge are preprinted on the

back of the form and do not require any documentation be submitted nor does it describe

what documentation, if any, is required to qualify for a false certification (disqualifying

status) discharge.

57.     By agency decision dated December 11, 2009, the Secretary advised the

Plaintiff's attorney that if the Plaintiff had additional documentation that he believed

supported his request for a discharge of the loans and that he did not provide at the time

the agency denied his request, that the Plaintiff should submit that documentation.

58.     To establish entitlement to discharge, the Secretary required that the

Plaintiff submit documentation that indicated that he was enrolled in a training program

occupation for which the training program supported by the loan was intended to qualify for a false certification (disqualifying status) discharge.

63.     These additional criteria and eligibility standards for the evaluation of false certification (disqualifying status) discharges have not been published and/or made widely available to the public as required by 5 U.S.C. §552.

64.     By utilizing these additional unpublished standards, the defendants denied the plaintiff the opportunity to supply necessary evidence supporting his request for false certification (disqualifying status) discharge thus depriving the plaintiff of his rights set forth in 20 U.S.C. §1087(a) and his right to Due Process of Law as guaranteed by the Fifth Amendment to the United States Constitution. The failure to make these standards public also violates the Administrative Procedure Act, 5 U.S.C. §552 and §§701, *et seq.*

65.     Further, the procedures deprive borrowers of the ability to supply correct information or submit additional information in order to supplement their requests for discharge thereby producing arbitrary and capricious decisions in violation of the Due Process Clause guaranteed by the Fifth Amendment to the United States Constitution.

### Third Claim for Relief
(Constitutional Equal Protection Challenge to Defendants' Procedures for Processing Requests for False Certification (Disqualifying Status) Discharge)

66.     The allegations contained in paragraphs 1 through 65 of this complaint are adopted and incorporated by reference herein.

67.     Students who receive federally insured student loans whose eligibility to borrow was falsely certified by the school have a statutory right to request that their loan be discharged if they received the loan on or after January 1, 1986. *20 U.S.C. §1087.*

68.     The Secretary considers a student's eligibility to borrow to have been falsely certified by the school if the school certified the eligibility of a student who, because of a physical or mental condition, age, *criminal record*, or other reason accepted by the Secretary, would not meet the requirements for employment (in the student's State of residence when the loan was originated) in the occupation for which the training program supported by the loan was intended. 34 C.F.R. §685.215(a) (1) (iii).

69.     Based upon information and belief, the Defendants have a policy that requires borrowers' request for discharge of loans under the false certification (disqualifying status) provisions be denied if the student was enrolled in a 'degree' program.

70.     However, on the back of the form that the Defendants provide to borrowers to complete to be considered for a false certification (disqualifying status) discharge, 'program of study' is specifically defined as an "instructional program leading to a *degree or certificate* in which you (or, for parent PLUS borrowers, the student) were enrolled." (Emphasis added). *See Exhibit E* at §5.

71.     Although Plaintiff's program of study was a '60-credit certificate' in 'paralegal studies', under the Defendants' policy the Plaintiff would have been denied a discharge of his loan had he been enrolled in a 'degree' program; regardless of whether Plaintiff had a "physical or mental condition, age, or criminal record that prevented him from meeting the requirements for employment in the occupation for which the training program supported by the loan was intended".

72.     These additional criteria and eligibility standards for the evaluation of

false certification (disqualifying status) discharges have not been published and/or made

widely available to the public as required by 5 U.S.C. §552.

73.     By utilizing these additional unpublished standards, the Defendants

deprive borrowers of their rights set forth in 20 U.S.C. §1087(a). The failure to make

these standards public also violates the Administrative Procedure Act, 5 U.S.C. §552 and

§§701, *et seq.*

74.     Further, defendants' policy that requires borrowers' request for a

discharge of loans under the false certification (disqualifying status) provisions be denied

if the student was enrolled in a 'degree' program, violates the Equal Protection Clause of

the United States Constitution because it indiscriminately deny discharge of loans under

the false certification statute to certain classes of students based on their 'program of

study' regardless of a "physical or mental condition, age, or criminal record that

prevented them from meeting the requirements for employment in the occupation for

which the training program supported by the loan was intended".

### Fourth Claim for Relief
### (Constitutional Challenge to Notices)

75.     The allegations contained in paragraphs 1 through 74 of this complaint are

adopted and incorporated by reference herein.

76.     By agency decision dated December 11, 2009, the Secretary advised the

Plaintiff's attorney that if the Plaintiff had additional documentation that he believed

supported his request for a discharge of the loans and that he did not provide at the time

the agency denied his request, that the Plaintiff should submit that documentation. *See

Exhibit H.*

18

77.     This notice did not provide the Plaintiff with any opportunity to learn what documentation may be needed to establish his claim or obtain information concerning the standards to be applied. The notice simply stated that "if the Plaintiff had additional documentation that he believed supported his request for a discharge of the loans and that he did not provide at the time the agency denied his request, that the Plaintiff should submit that documentation."

78.     By failing to provide the Plaintiff with any opportunity to learn what documentation may be needed to establish his claim or obtain information concerning the standards to be applied, the notice violates the Due Process Clause guaranteed by the Fifth Amendment to the United States Constitution.

79.     Beginning on December 26, 2009 and, continuing until June 3, 2010, the Plaintiff submitted other requests to the Defendants to discharge the consolidated loans on the basis the school certified the eligibility of the Plaintiff who because of his *criminal record* would not meet the requirements for employment as a 'Paralegal' for which the UMUC "paralegal studies" training program supported by the loan was intended.

80.     The Plaintiff provided supporting documentation along with a sworn affidavit as required by 34 C.F.R. §685.215(a)(1)(iii) and 20 U.S.C. §1087(a) to the Defendants showing that from the fall of 1993 through the spring of 1996 he was enrolled in the UMUC "paralegal studies" program and that the "paralegal studies" program was a "60-credit certificate" training (and *not a degree*) program that "specifically and exclusively prepared students for employment as a Paralegal."

81.     The Plaintiff was sent a notice that his request for discharge of his consolidated loans was denied. The notice failed to state a specific basis for the denial of

the Plaintiff's requests for a false certification (disqualifying status) discharge. This notice was dated May 10, 2010 and stated that the Defendants "will continue to hold you fully responsible for repaying your loan." *See Exhibit J.*

82.     The notice also failed to advise the Plaintiff of how to proceed after receiving the notice.

83.     The failure of the defendants to provide a meaningful explanation regarding why plaintiff's discharge request was denied, deprives the plaintiff of the ability to supply correct information or to submit additional information in order to supplement his request for discharge. It further denies the plaintiff the ability to determine if a review of the action was appropriate or if a subsequent request for discharge should be pursued, thus depriving the plaintiff of Due Process of Law as guaranteed by the Fifth Amendment to the United States Constitution.

84.     In sum, by failing to provide the Plaintiff with adequate notice of the basis for the denial and by failing to advise the Plaintiff of how to proceed after receiving the May 10, 2010 notice, the Defendants deprived the plaintiff of Due Process of Law as guaranteed by the Fifth Amendment to the United States Constitution.

### Fifth Claim for Relief
(Tortuous Interference with Statutory Rights)

85.     The allegations contained in paragraphs 1 through 84 of this complaint are adopted and incorporated by reference herein.

86.     Students who receive federally insured student loans whose eligibility to borrow was falsely certified by the school have a statutory right to request that their loan be discharged if they received the loan on or after January 1, 1986. *20 U.S.C. §1087.*

87.     The Secretary considers a student's eligibility to borrow to have been falsely certified by the school if the school certified the eligibility of a student who, because of a physical or mental condition, age, *criminal record*, or other reason accepted by the Secretary, would not meet the requirements for employment (in the student's State of residence when the loan was originated) in the occupation for which the training program supported by the loan was intended. 34 C.F.R. §685.215(a) (1) (iii).

88.     Based upon information and belief, Defendant ACS, as the servicer of the Plaintiff's consolidated loans and, under the Secretary's regulations, is responsible for processing borrower's requests for cancellation or discharge of loans.

89.     By agency decision dated December 11, 2009, the Secretary advised the Plaintiff's attorney that if the Plaintiff had additional documentation that he believed supported his request for a discharge of the loans and that he did not provide at the time the agency denied his request, that the Plaintiff should submit that documentation.

90.     The Secretary instructed the Plaintiff to submit the additional documentation directly to Defendant ACS. *See Exhibit H.*

91.     To establish entitlement to discharge, the Plaintiff was required to submit documentation to the Defendants that indicated that he was enrolled in a training program that prepared him for employment in either law enforcement or as a paralegal, or show that he was enrolled in law school.

92.     Beginning on December 26, 2009 and, continuing until June 3, 2010, the Plaintiff submitted other requests to the Defendants to discharge the consolidated loans on the basis the school certified the eligibility of the Plaintiff who because of his *criminal*

*record* would not meet the requirements for employment as a 'Paralegal' for which the UMUC "paralegal studies" training program supported by the loan was intended.

93.     The Plaintiff provided supporting documentation along with a sworn affidavit as required by 34 C.F.R. §685.215(a)(1)(iii) and 20 U.S.C. §1087(a) to the Defendants showing that from the fall of 1993 through the spring of 1996 he was enrolled in the UMUC "paralegal studies" program and that the "paralegal studies" program was a "60-credit certificate" training (and *not a degree*) program that "specifically and exclusively prepared students for employment as a Paralegal."

94.     Defendant ACS knew that the Plaintiff had a statutory right to have his application for false certification (disqualifying status) discharge considered pursuant to 20 U.S.C. §1087(a) and that the Defendant, as the servicer of the Plaintiff's consolidated loans and, under the Secretary's regulations, was responsible for processing the Plaintiff's requests for cancellation or discharge of the consolidated loans.

95.     Based upon information and belief, Defendant ACS did not process the Plaintiff's request for discharge as it was required to do but rather sent the Plaintiff a denial notice dated May 10, 2010, stating that the Defendants "will continue to hold you fully responsible for repaying your loan." *See Exhibit J.*

96.     As a result of Defendant ACS's interference with the Plaintiff's applications for false certification (disqualifying status) discharge, the Plaintiff was deprived of the statutory right to have his application for false certification disqualification status discharge that he submitted to the Defendants between December 26, 2009 and June 3, 2010 considered under 20 U.S.C. §1087(a).

97.     But for the Defendant's interference, the Plaintiff would have been entitled to a cancellation or discharge of the consolidated loans including reimbursement of any amounts collected on the loans because the Plaintiff established that he was enrolled in a training program that prepared him for employment as a paralegal.

98.     The Plaintiff has sustained damages in an amount in excess of $50,000 as a result of Defendant ACS's actions.

### Sixth Claim for Relief
(Tortuous Interference with Contract)

99.     The allegations contained in paragraphs 1 through 98 of this complaint are adopted and incorporated by reference herein.

100.    On June 18, 2004, Plaintiff and the Secretary entered into a valid contract whereby the Plaintiff's federally guaranteed student loans and FFEL loans were consolidated under the William D. Ford Federal Direct Loan Program ("FFDLP"). Based upon information and belief, the total outstanding principle and interest balance at the time the loans were consolidated was $30,259.04.

101.    Under the terms of the contract, Plaintiff had a right to request that the Secretary cancel or discharge his consolidated loans under 20 U.S.C. §1087 and 34 C.F.R. §685.215(a) (1) (iii).

102.    Based upon information and belief, Defendant ACS, as the servicer of the Plaintiff's consolidated loans and, under the Secretary's regulations, is responsible for processing borrower's requests for cancellation or discharge of loans.

103.    On April 14, 2009, the Plaintiff requested that the Secretary reconsider his previous application for a discharge of his loans because he was not afforded the opportunity to submit records that indicated that he was enrolled in a training program

23

that specifically and exclusively prepared him for employment in law enforcement or as a paralegal before his previous request for a discharge was denied. *See Exhibit G.*

104.    By agency decision dated December 11, 2009, the Secretary advised the Plaintiff's attorney that if the Plaintiff had additional documentation that he believed supported his request for a discharge of the loans and that he did not provide at the time the agency denied his request, that the Plaintiff should submit that documentation.

105.    The Secretary instructed the Plaintiff to submit the additional documentation directly to Defendant ACS. *See Exhibit H.*

106.    To establish entitlement to discharge, the Plaintiff was required to submit documentation to the Defendants that indicated that he was enrolled in a training program that prepared him for employment in either law enforcement or as a paralegal, or show that he was enrolled in law school.

107.    Beginning on December 26, 2009 and, continuing until June 3, 2010, the Plaintiff submitted other requests to the Defendants to discharge the consolidated loans on the basis the school certified the eligibility of the Plaintiff who because of his *criminal record* would not meet the requirements for employment as a 'Paralegal' for which the UMUC "paralegal studies" training program supported by the loan was intended.

108.    The Plaintiff provided supporting documentation along with a sworn affidavit as required by 34 C.F.R. §685.215(a)(1)(iii) and 20 U.S.C. §1087(a) to the Defendants showing that from the fall of 1993 through the spring of 1996 he was enrolled in the UMUC "paralegal studies" program and that the "paralegal studies" program was a "60-credit certificate" training (and *not a degree*) program that "specifically and exclusively prepared students for employment as a Paralegal." *See Exhibit I.*

24

109.    Defendant ACS knew of the existence of the contract between the Plaintiff and the Secretary and knew that the Defendant, as the servicer of the Plaintiff's consolidated loans and, under the Secretary's regulations, was responsible for processing the Plaintiff's requests for cancellation or discharge of the consolidated loans.

110.    Based upon information and belief, Defendant ACS intentionally and without legal justification interfered with the contract between the Plaintiff and the Secretary by not processing the Plaintiff's request for discharge as it was required to do and instead sent Plaintiff a denial notice dated May 10, 2010, stating that the Defendants "will continue to hold you fully responsible for repaying your loan." *See Exhibit J.*

111.    But for the Defendant's interference, the Plaintiff would have been entitled to a cancellation or discharge of the consolidated loans including reimbursement of any amounts collected on the loans because the Plaintiff established that he was enrolled in a training program that prepared him for employment as a paralegal.

112.    As a result of the Defendant's interference, the Plaintiff's request for discharge of the consolidated loan was denied.

113.    The Plaintiff has sustained damages in an amount in excess of $50,000 as a result of Defendant ACS's actions.

### Seventh Claim for Relief
(Breach of Contract)

114.    The allegations contained in paragraphs 1 through 113 of this complaint are adopted and incorporated by reference herein.

115.    The Plaintiff entered into binding contracts with the Defendants when he executed his Federal Direct Consolidation Loan Promissory Note.

116.    The Federal Direct Consolidation Loan Promissory Note provided that the Defendants would discharge (forgive) the Plaintiff's Direct Consolidation Loan if: the Plaintiff's eligibility for one or more of the Direct Loan Program or FFEL Program loans that the Plaintiff consolidated was falsely certified by the school.

117.    Plaintiff's eligibility for the Direct Loan Program or FFLEL Program loans was falsely certified by the school but the Defendants have not discharged the Plaintiff's loans.

118.    The Defendants breached the terms of the Federal Direct Consolidation Loan Promissory Note executed by the Plaintiff by failing to discharge the Plaintiff's consolidated loan.

119.    The Plaintiff has been damaged by the Defendants' breach of the terms of the Federal Direct Consolidation Loan Promissory Note in an amount to be determined at trial.

**Eighth Claim for Relief**
<u>(Breach of Contract)</u>

120.    The allegations contained in paragraphs 1 through 119 of this complaint are adopted and incorporated by reference herein.

121.    The Plaintiff entered into binding contracts with the Defendants when he executed his Federal Direct Consolidation Loan Promissory Note.

122.    The Federal Direct Consolidation Loan Promissory Note provide that interest may be capitalized on a student loan only to the extent it has accrued but was not paid when due.

123.    The Defendants breached the terms of the Federal Direct Consolidation Loan Promissory Note executed by the Plaintiff by capitalizing interest that had accrued but was not yet due at the time of capitalization.

124.    The Plaintiff has been damaged by the Defendants' breach of the terms of the Federal Direct Consolidation Loan Promissory Note in an amount to be determined at trial.

### Ninth Claim for Relief
(Breach of Contract)

125.    The allegations contained in paragraphs 1 through 124 of this complaint are adopted and incorporated by reference herein.

126.    The Plaintiff entered into binding contracts with the Defendants when he executed his Federal Direct Consolidation Loan Promissory Note.

127.    The Federal Direct Consolidation Loan Promissory Note provided that if the amount the Defendants send to the holders of Plaintiff's loans was more than the amount needed to pay off the balances of the Plaintiff's selected loans, the holders will refund the excess to the Defendants and it will be applied against the outstanding balance of the Plaintiff's Direct Consolidation Loan.

128.    The Defendants' Direct Loan Consolidation Center overpaid the Plaintiff's Sallie Mae defaulted loans and, on June 21, 2004, Sallie Mae returned $3,238.97 as a refund to the Defendants' Direct Loan Consolidation Center.

129.    Further, prior to the time of the consolidation, UMUC refunded a total of $2,556.00 to the Defendants between January 23 and January 25 of 1996.

130.    The Defendants however failed to adjust the outstanding principle and interest balance of the consolidated loan to reflect either of these refunds.

27

131.    The Defendants breached the terms of the Federal Direct Consolidation Loan Promissory Note executed by the Plaintiff by failing to apply the refunds against the outstanding balance of the Plaintiff's Direct Consolidation Loan.

132.    The Plaintiff has been damaged by the Defendants' breach of the terms of the Federal Direct Consolidation Loan Promissory Note.

133.    The Plaintiff is entitled to have the outstanding principle and interest balance of the consolidated loan adjusted by $3,238.97 plus interest beginning from June 21, 2004 to reflect the refund from Sallie Mae.

134.    The Plaintiff is also entitled to have the outstanding principle and interest balance of the consolidated loan adjusted by $2,556.00 plus interest beginning from January 1996 to reflect the refund from UMUC.

### PRAYER FOR RELIEF

WHEREFORE, the Plaintiff prays that this Court will:

a.    Enter a declaratory judgment that the Plaintiff satisfies the statutory conditions for discharge of the consolidated loans under 20 U.S.C. §1087(c) and that the Defendants are obligated to discharge the Plaintiff's liability on the loans, including reimbursing the plaintiff for any amounts collected on the loans, and reporting to credit agencies or eligible institutions that the plaintiff's loans have been discharged.

b.    Directing the Defendants to discharge the Plaintiff's liability on the consolidated loans, including reimbursing the plaintiff for any amounts collected by the Defendants on the consolidated loans and reporting to credit agencies or eligible institutions that the plaintiff's consolidated loans have been discharged.

c.    Enter a declaratory judgment declaring that the defendants' restrictive standards violate 20 U.S.C. 1087(a), 34 C.F.R. §685.215(a)(1)(iii) and the requirements of the Administrative Procedure Act; grant a preliminary and permanent injunction enjoining the defendants from implementing its unpublished false certification (disqualifying status) discharge standards; enter an order reversing the Defendants' action in denying the plaintiff's discharge request;

d.    Enter a declaratory judgment declaring that the defendants' policy and procedures for processing requests for false certification (disqualifying status) discharge is unconstitutional as it violates the Equal Protection and Due Process Clauses guaranteed by the Fifth Amendment to the United States Constitution including the requirements of the Administrative Procedure Act; grant a preliminary and permanent injunction enjoining the defendants from implementing these procedures; enter an order reversing the Defendants' action in denying the plaintiff's discharge request;

e.    Enter a declaratory judgment declaring that the notices the Plaintiff received from the Defendants dated December 11, 2009 and May 10, 2010, are unconstitutional as they violate the Due Process Clause guaranteed by the Fifth Amendment to the United States Constitution including the requirements of the Administrative Procedure Act;

f.    Enter a declaratory judgment that the Defendants' interest capitalization practices are in breach of the form Federal Direct Consolidation Loan Promissory Note and enter judgment in favor of the Plaintiff for all amounts owed to the Plaintiff as a result of the breach.

g.     Enter a declaratory judgment that the Defendants' are required to adjust the outstanding principle and interest balance of the consolidated loan by $3,238.97 plus interest beginning from June 21, 2004 to reflect the refund from Sallie Mae.

h.     Enter a declaratory judgment that the Defendants' are required to adjust the outstanding principle and interest balance of the consolidated loan by $2,556.00 plus interest beginning from January 1996 to reflect the refund from UMUC.

i.     Enter judgment in favor of the Plaintiff and against Defendant Affiliated Computer Services, Inc. in the amount of $50,000, as and for compensatory damages plus punitive damages in an amount to be determined by the Court;

j.     Award the plaintiff his costs and reasonable attorneys' fees in this action; and

k.     Grant such further and other relief as the Court deems just and proper.

## DEMAND FOR JURY TRIAL

The Plaintiff, Joseph Johnson, Jr., demands a trial by jury on each and every issued raised herein.

Respectfully submitted,

November 15, 2010

*Joseph Johnson, Jr.*

Joseph Johnson, Jr.
2600 Brinkley Road PH 1005
Fort Washington, MD   20744
240-605-9921

On Wed, 4 Feb 2009 12:38:47 -0500, "William W Sondervan"
<WSondervan@umuc.edu> wrote:

Simply stated, yes!


Dr. William W Sondervan
Professor and Director
Criminal Justice, Investigative Forensics and Legal Studies
University of Maryland University College
240 582 2868

-----Original Message-----
From: Joe Johnson [mailto:joe.johnson@namgt.com]
Sent: Wednesday, February 04, 2009 12:38 PM
To: William W Sondervan
Subject: RE: Paralegal Studies Program


Dr. Sondervan,

I guess to make my question a little more clearer I should ask: if I
wanted to pursue a career or occupation as a Paralegal, is your
Paralegal program specifically intended to provide students with the
specific training that is necessary to pursue a career or occupation as
a Paralegal in the legal field with a certificate or BS degree?

On Wed, 4 Feb 2009 12:19:28 -0500, "William W Sondervan"
<WSondervan@umuc.edu> wrote:

I guess I don't understand your question?? It prepares you to be a
paralegal. It also teaches you how to write, use a computer and that
goes with it. The entire program is on-line if you want to look it up.


Dr. William W Sondervan
Professor and Director
Criminal Justice, Investigative
Forensics and Legal Studies
University of Maryland University College
240 582 2868

-----Original Message-----
From: Joe Johnson [mailto:joe.johnson@namgt.com]
Sent: Wednesday, February 04, 2009 11:55 AM
To: William W Sondervan
Subject: RE: Paralegal Studies Program


Dr. Sondervan,

Yes, I wanted to know whether UMUC's Paralegal program specifically
tailored to train students to be nothing more than a Paralegal.
Because some programs have studies that offers Paralegal only as a
specialization, and I wanted to be clear that the UMUC's Paralegal
program is specifically intended to train students to be Paralegals
and not as a specialization.

Thanks for your time and cooperation.

On Wed, 4 Feb 2009 11:21:48 -0500, "William W Sondervan"
<WSondervan@umuc.edu> wrote:

The paralegal certificate prepares student to be a paralegal. Is that
your question?


Dr. William W Sondervan
Professor and Director
Criminal Justice, Investigative
Forensics and Legal Studies
University of Maryland University College
240 582 2868

-----Original Message-----
From: Joe Johnson [mailto:joe.johnson@namgt.com]
Sent: Wednesday, February 04, 2009 10:51 AM
To: William W Sondervan
Subject: RE: Paralegal Studies Program


Dr. Sondervan,

Thanks again for your response.

I guess what I wanted to be clear on was whether the Paralegal
Program offered by UMUC a program (not a specialization) that
specifically train students for an occupation or employment with
specific requirements to be a Paralegal?


On Wed, 4 Feb 2009 10:40:48 -0500, "William W Sondervan"
<WSondervan@umuc.edu> wrote:

The certificate is 60 credits and is within the bachelors program.
The get the BS in legal studies it's 120 credits. Many graduates become
paralegals and many go on to law school. Does that make sense?


Dr. William W Sondervan
Professor and Director
Criminal Justice, Investigative
Forensics and Legal Studies
University of Maryland University College
240 582 2868

-----Original Message-----
From: Joe Johnson [mailto:joe.johnson@namgt.com]
Sent: Wednesday, February 04, 2009 10:22 AM
To: William W Sondervan
Subject: RE: Paralegal Studies Program


Dr. Sondervan,

Thank you so much for your response to my email.

Just so that I understand you correctly, the Paralegal program offered by UMUC is a 60 credit certificate and a BS program that specifically trains students for an occupation with specific requirements to be a paralegal?

What is the difference and/or benefit between the 60 credit certificate and BS Paralegal program offered by UMUC?

On Wed, 4 Feb 2009 09:47:25 -0500, "William W Sondervan" <WSondervan@umuc.edu> wrote:

Joe,
The paralegal program is a 60 credit certificate which is embedded in the legal studies BS program. You can take it separately or as part of the BS degree. It's open enrollment so you can just sign up on-line and it prepares you to be a paralegal. Many of the graduates become paralegals or go on to law school. Hope that answers your question?


Dr. William W Sondervan
Professor and Director
Criminal Justice, Investigative
Forensics and Legal Studies
University of Maryland University College
240 582 2868

-----Original Message-----
From: Joe Johnson [mailto:joe.johnson@namgt.com]
Sent: Wednesday, February 04, 2009 9:28 AM
To: William W Sondervan
Subject: Paralegal Studies Program


Dear Dr. Sondervan,

I have a couple of questions regarding UMUC's Paralegal Studies Program.

I need to know whether the Paralegal program offered by UMUC is a Degree or Certificate Program and the requirements for obtaining enrollment in the Program. In addition, I need to know whether the Paralegal Program offered by UMUC specifically and exclusively train students to be Paralegals and what does completion of the Paralegal Program permit a student to do as far as employment is concerned.

Thank you in advance for your assistance.

 **YAHOO! MAIL** Classic

**Chat session.**                                                Wednesday, February 4, 2009 8:24 AM

From: "*UMUC _CCSupport" <UMUC_CCSupport@technisource.com>
Tor: "JJohnson531@yahoo.com" <JJohnson531@yahoo.com>

Hello Joe,

Below is the chat we had:

Cheryl: Hello Joe. My name is Cheryl. How may I help you?
Johnson, Joe: Does the UMUC Paralegal program prepare students to be a paralegals?
Cheryl: Yes it does.
Johnson, Joe: Is the Paralegal program a Degree program?
Cheryl: No, It is a Certificate Program.
Johnson, Joe: What are the requirements for obtaining a Certificate in the Paralegal Program?
Cheryl: You must have a high school diploma and a GPA of at least 2.0.
Johnson, Joe: What does obtaining a Certificate in the Paralegal Program permit a student to do as far as employment is concerned?
Cheryl: At the completion of the Program, you should be able to obtain employment as a Paralegal.
Johnson, Joe: So then as I understand it, the Paralegal Program offered by UMUC specifically and exclusively train students to be Paralegals?
Cheryl: That is correct.
Johnson, Joe: Where can I obtain additional information regarding the UMUC Paralegal Program?
Cheryl: Go to umuc.edu. Click on Academic Programs on the left. Scroll down and click on Undergraduate Certificates. Scroll down and click Paralegal Studies. That will show you what classes you need to take. It will also give you a Program Overview.
Johnson, Joe: What department of UMUC are you with?
Cheryl: We are general information.
Johnson, Joe: Is there a telephone number for the Paralegal Programs branch of UMUC?
Cheryl: The best thing I can tell you is to call 800-888-8682 after 8:30 a.m. Ask to speak with an Undergrad Enrollment Specialist.
Johnson, Joe: Ok. Thank you!
Cheryl: You're welcome. Is there anything else I can help you with?
Johnson, Joe: That is all. Can you email this Chat session to me?
Cheryl: I will email the chat to you. If you have further questions, please feel free to contact me.
Johnson, Joe: Thanks Cheryl, have a good day !
Cheryl: You're welcome. You too.


**Cheryl Heberlig**
**Customer Service Team**
**University of Maryland University College**
info@umuc.edu
www.umuc.edu
800-888-8682



**Joe Johnson <jjohnson531@gmail.com>**

# Fwd: RE: Enrollment

1 message

---

**jjohnson531@verizon.net <jjohnson531@verizon.net>**
To: JJohnson531@gmail.com

**Mon, Apr 20, 2009 at 7:57 PM**

---

Apr 20, 2009 06:53:08 PM, WSondervan@umuc.edu wrote:

> The answer is yes.
>
> ---
>
> **From:** Joe Johnson [mailto:JJohnson531@verizon.net]
> **Sent:** Friday, April 17, 2009 7:37 PM
> **To:** Donna Maria Nichols; William W Sondervan
> **Subject:** RE: Enrollment
>
> Does a completion of the UMUC Paralegal studies program prepare students for employment
> as a Paralegal?
>
> ---
>
> **From:** Donna Maria Nichols [mailto:DNichols@umuc.edu]
> **Sent:** Tuesday, April 14, 2009 8:13 PM
> **To:** William W Sondervan
> **Cc:** JJohnson531@verizon.net
> **Subject:** RE: Enrollment
>
> Hi Joe,
>
>
> The records that provide program information are no longer in PeopleSoft however according to
> the classes you took it appears you were in paralegal studies.
>
>
>
> Donna
>
>
> *Donna Nichols*
> *Asst. Director, Academic Support*
> *Adjunct Instructor*
> *Business and Professional Programs*
> *School of Undergraduate Studies*
> Office - (240) 582-2866

*Fax - (240) 582-2993*

**From:** Joe Johnson [mailto:JJohnson531@verizon.net]
**Sent:** Sunday, April 12, 2009 11:41 AM
**To:** William W Sondervan
**Subject:** Enrollment

Dr. Sondervan,

I was enrolled at the UMUC as an undergraduate beginning in 1993. I need to know what program I was enrolled in while I attended UMUC. My student ID # is 0210584, DOB: 5/31/1970, Last four digits of SSN: 6136.

# YAHOO! MAIL
### Classic

**UMUC Chat**                                                      Thursday, December 24, 2009 9:33 AM

**From:** "*UMUC _CCSupport" <UMUC_CCSupport@technisource.com>
  **To:** "JJohnson531@yahoo.com" <JJohnson531@yahoo.com>

Hello Mr. Johnson,

      Thank you for contacting UMUC.  Below is a copy of our chat for your records.

**Pamela:**
Thank you for contacting UMUC!  My name is Pam.  How may I help you?
**JOHNSON, Joe:**
When I first enrolled at UMUC in the Fall 1993 through the Spring 1996, I had a declared
primary of  Paralegal studies, with a criminal justice secondary.
**JOHNSON, Joe:**
I need to know does the UMUC Paralegal program that I was enrolled prepare students to be
Paralegals
**Pamela:**
The program addresses the organization, functions and processes of institutions in the U.S.
legal system, roles and issues in the paralegal field, legal ethics and selected specialty
areas.
**Pamela:**
The curriculum emphasizes important skills, including legal analysis, communication, legal
research, computer competence, legal drafting, investigation, organization and specialized
legal skills.
**JOHNSON, Joe:**
So, based upon what you have just described does the UMUC Paralegal program train you to be a
Paralegal?

**Pamela:**
Yes, students learn the skills need to become a paralegal.
**JOHNSON, Joe:**
Is the Paralegal program a Degree program or Certificate program?
**Pamela:**
The paralegal program is a certificate program.  The actual degree program that is offered is
called Legal Studies.
**JOHNSON, Joe:**
What is the difference in the Paralegal program that I was enrolled and the Legal Studies
program?
**Pamela:**
For one the ceritificate program requires only 60 credits.  The degree program requires 120
credits and prepares students to enter into law school.
**JOHNSON, Joe:**
With the Paralegal program that I was enrolled, and upon completion of 60-credits I should be
able to obtain employment as a Paralegal, is that correct?
**Pamela:**
Yes, that is correct.
**JOHNSON, Joe:**
And if I were to get an addtional 60-credits on top of the credits I earned in the Paralegal
program, I should be able to earn a degree and enter into law school, is that also correct?

**Pamela:**
That is correct, however you will need to let your advisor know that you intend on switching

over to the degree program.

**JOHNSON, Joe:**
Ok. What are the requirements for completing the Paralegal studies program?

**Pamela:**
http://www.umuc.edu/programs/undergrad/certificates/paralegal_stud.shtml

**Pushed Pamela to: http://www.umuc.edu/programs/undergrad/certificates/paralegal_stud.shtml**

**JOHNSON, Joe:**
Can you give me a few seconds to look at that site you just gave?

**Pamela:**
Sure.

**JOHNSON, Joe:**
In 1993, the course designation for the Paralegal studies program was "PLGL", however, I notice that now it's "LGST", is there a difference?

**Pamela:**
I am sure the classes have changed some since 1993.  Did you complete any classes for then?

**JOHNSON, Joe:**
I completed all of the courses in the "Four required legal studies courses", all of the courses in the "general practice procedure and legal skills elective" and three (3) of the courses in the "general practice substantive law elective". I did not. I think the total credits I ended up with were 60.

**Pamela:**
Did you finsih the program?

**JOHNSON, Joe:**
I do not think so.

**Pamela:**
If you completed 60 credits then you should have been awarded thd certificate.  You may want to contact an advisor at 240-684-2104.

**JOHNSON, Joe:**
If those are all of the courses that are required to obtain the certificate in the Paralegal studies program that I was enrolled, I took all of those courses and should have earned the certificate in the Paralegal studies program when I was enrolled in 1993, is that correct?

**Pamela:**
Yes, as long as you completed all courses with passing grades.  Then you would have had to apply for graduation.

**JOHNSON, Joe:**
What are the requirements for graduation?

**Pamela:**
The requirements are that you complete all 60 credits.

**JOHNSON, Joe:**
Ok. What would I had been awarded at the graduation?

**Pamela:**
When students are in their final semester the must apply for their diplom/certificate.  Once they application is submitted their is a final degree audit to ensure that all courses have been completed.  Then students receive their diploma or certificate.

**JOHNSON, Joe:**
So, I would have been entitled to receive the "certificate" in the Paralegal studies program at the graudation assuming that I completed all 60-credits?

**Pamela:**
Yes, this is why you should contact an advisor to see if you can still receive the certificate.

**JOHNSON, Joe:**
And in order to get a degree to go onto Law School I had to have been enrolled in the "Legal Studies" program and not just the "Paralegal studies" program, is that correct?

**Pamela:**

Yes.

**JOHNSON, Joe:**
Ok..What department of UMUC are you with?

**Pamela:**
I am in the call center and answer general questions about the programs then refer students to the correct department for more information.

**JOHNSON, Joe:**
So, if I had other questions is it possible to call you on the phone instead of on Chat?

**Pamela:**
Yes, at 1-800-888-8682.

**JOHNSON, Joe:**
Ok..Thanks...Can you email this Chat session to me?

**Pamela:**
Yes, would you like me to send it to the email address you provided for this chat?

**JOHNSON, Joe:**
That would be fine...confirm it as: JJohnson531@gmail.com.

**Pamela:**
Yes, that is the email I have.

**JOHNSON, Joe:**
Ok..Thanks Pam, and I hope you have a Merry Christmas and Happy New Year !

**Pamela:**
You're welcome!  Thank you and have a Merry Christmas and a Happy New Year as well!!

Have a great day!

Pamela Zimmerman
Customer Service Team
University of Maryland University College



Joe Johnson <jjohnson531@gmail.com>

## Our Chat

1 message

**\*UMUC _CCSupport <UMUC_CCSupport@technisource.com>**

**Thu, Oct 14, 2010 at 9:53 AM**

To: "JJohnson531@gmail.com" <JJohnson531@gmail.com>

Mr. Johnson

Here is the copy of our chat you requested. Thank you for your interest in UMUC. And I hope you have a wonderful day and upcoming weekend!!

**Gennifer:**

Thank you for contacting UMUC. This is Gennifer. May I have your student Id and phone number please?

**JOHNSON, Joseph:**

Is the UMUC 'paralegal studies' a training program that specifically and exclusively prepare students for employment as a 'paralegal'?

**Gennifer:**

The certificate?

**JOHNSON, Joseph:**

The 'paralegal studies' offered by UMUC.

**Gennifer:**

ok let me look into this.

**Gennifer:**

Ok beings that it is a certificate program, It can get you in for an entry level position but it is recommended that you continue to a higher degree.

Case 3:10-cv-02333-B   Document 1   Filed 11/16/10   Page 42 of 112   PageID 42

**JOHNSON, Joseph:**

Is the 'paralegal studies' offered by UMUC a training program that prepare students for employment as a 'paralegal'?

**Gennifer:**

It does prepare you for an entry level position. But is recommended that you continue a higher degree in that field.

**Gennifer:**

Is there any other questions that I can answer for you today?

**JOHNSON, Joseph:**

So are you saying that the 'paralegal studies' offered by UMUC is not a degree program?

**Pushed Gennifer to: http://www.umuc.edu/programs/undergrad/certificates/paralegal_stud.shtml**

**Gennifer:**

No It is a certificate in 'paralegal studies' .

**JOHNSON, Joseph:**

So students that enroll in the UMUC 'paralegal studies' program are trained to be 'paralegals', but can only get a 'certificate' in the program and not a degree?

**Gennifer:**

That is correct we only offer the certificate. Which is more for someone who is looking to get into an entry level position or for someone who needs to take that course for their current employer.

Case 3:10-cv-02333-B   Document 1   Filed 11/16/10   Page 43 of 112   PageID 43

**JOHNSON, Joseph:**

So UMUC 'paralegal studies' program train the student for  the specific requirements for entry level employment as a 'paralegal'?

**Gennifer:**

focuses on the legal concepts, procedures and skills used in a wide variety of legal environments. The program addresses the organization, functions and processes of institutions in the U.S. legal system, roles and issues in the paralegal field,

**Gennifer:**

legal ethics and selected specialty areas. The curriculum emphasizes important skills, including legal analysis, communication, legal research, computer competence, legal drafting, investigation, organization and specialized legal skills.

**Gennifer:**

Getting into an entry level position would depend on what the employer recommends for employment with that company.

**JOHNSON, Joseph:**

But the 'paralegal studies 'program offered by UMUC at least train the student for entry level requirements for employment into a 'paralegal' position?

**Gennifer:**

It does train you for it yes. But different employers want different credentials.

**Gennifer:**

I recommend that you call in and speak with an advisor. You can reach them at 1-800-888-8682. This is only a basic help desk.

**JOHNSON, Joseph:**

The 'certificate' in 'paralegal studies' is the only 'credential' UMUC offers?

**Gennifer:**

I recommend that you call in and speak with an advisor. You can reach them at 1-800-888-8682. This is only a basic help desk.

**JOHNSON, Joseph:**

Ok...can you email this chat session to me : JJohnson531@gmail.com?

**Gennifer:**

Ok I can do that for you. Is there anything else I can do for

Gennifer Watkins

University of Maryland University College

Customer Service Team

Phone:

800-888-8682

Email:

info@umuc.edu

Chat:

http://www.umuc.edu/chat/

Web Site:

www.umuc.edu



# UNIVERSITY OF MARYLAND UNIVERSITY COLLEGE
## 1993-94 COLLEGE CATALOG

- Catalog conversion notes



**CollegeSource**®
by Career Guidance Foundation

UNIVERSITY OF MARYLAND UNIVERSITY COLLEGE

ENGL 391, or HUMN 221) or have equivalent experience before enrolling. For further information, call 301-985-7722.

**National Universities Degree Consortium**
Students may now earn a bachelor's degree from University College by taking courses broadcast via cable and satellite. This opportunity, coordinated through the Open Learning program, is made available through the National Universities Degree Consortium (NUDC), a group of ten universities across the nation that have combined their resources to provide a degree-completion program by electronic means.

Sharing a common mission to extend education beyond the boundaries of individual institutions, the member universities work to develop course materials, including video lessons, that enable students to work independently. The video programs are televised through the Mind Extension University: The Education Network (ME/U), a cable and satellite distribution network.

The coursework for the degree being offered, which features a concentration in management, integrates contemporary theory and practice in that field. Among major topics covered in the courses are the global character of business today, management of diversity, leadership, problem solving and critical thinking, communication skills, ethics in business, and planning and competitive strategies.

Related upper-level courses outside of the primary concentration are provided through the other nine universities. Credit for those courses may be used toward a degree from University College. The other participating universities are California State University at Long Beach, Colorado State University, Kansas State University, the University of New Orleans, the University of Oklahoma, Oklahoma State University, the University of South Carolina, Utah State University, and Washington State University.

For more information about NUDC, call Mind Extension University (800-777-MIND) or the coordinator for independent learning at University College (301-985-7722).

**Prior Learning**
The Prior Learning office offers students two means of obtaining credit for previous study or for prior experiences beyond the classroom. One approach, the course-challenge examination, permits students to take comprehensive tests on material learned outside the classroom that is generally presented in college courses. A test is prepared individually for the student who requests it. The other approach, EXCEL through Experiential Learning, allows students to earn credit for college-level knowledge acquired in work and life experiences. After being admitted to the EXCEL program, students enroll in a course that requires them to prepare a portfolio of relevant experiences. The portfolio is evaluated by faculty specialists for possible credit. This course is also offered in the independent learning format. For further information, call 301-985-7755.

**Cooperative Education**
Students who take advantage of Cooperative Education (Coop) enjoy a unique opportunity to combine on-the-job experience with classroom learning. Students enroll in specially structured, personalized courses in which they earn upper-level academic credit integral to the bachelor's degree. Co-op enables students to learn new marketable skills while accumulating work experience in professional positions directly related to each student's particular curriculum at University College. The Co-op staff is available to help students find suitable positions in various career fields and to assist students in the process of self-direction. Students seeking job placement do not officially enroll in Co-op until appropriate positions have been found for them. For further information, call 301-985-7780.

**Paralegal Studies**
Law-related courses available in paralegal studies prepare students for positions in law firms, government agencies, corporations, and trade associations, as well as in banking and real estate. Paralegal courses are offered in College Park, Annapolis, Shady Grove, and Washington, D.C. They are also offered in the independent learning format. Courses are taught by practicing attorneys, judges, and law-enforcement officials. A completion document is awarded to students who have completed 10 courses. In addition, students may choose paralegal studies as a primary concentration in a first or a second bachelor's degree. Students in either program receive

UNIVERSITY OF MARYLAND UNIVERSITY COLLEGE

information about prospects for positions as legal assistants in government and in private firms in the Baltimore/Washington area. For further information, call 301-985-7733.

## Nuclear Science Program

University College, working with a consortium of nuclear utilities and the Department of Engineering at the University of Maryland College Park, has developed a degree program to improve the qualifications of personnel in the nuclear-power industry. Since 1984, the personnel of participating nuclear utilities have had the opportunity to earn a bachelor's degree with a primary concentration in nuclear science by combining self-paced, multimedia instruction with independent study at the sites where they work. Students in this program are assigned to faculty members, who guide them via telephone and computer conferencing and during site visits. For further information, call 301-985-7881.

## Institute for Gerontological Practice

The Institute for Gerontological Practice offers comprehensive, high-quality training to people who work in senior centers or who offer other direct services to older adults, to administrators of such programs, and to people interested in entering the field. The summer program addresses the needs of gerontological practitioners employed in various situations:

- Agencies and state units on aging
- Recreation departments
- Nutrition projects
- Nursing homes
- *Adult day care
- Hospice care
- Housing programs
- Municipal governments
- For further information, call 301-405-2543.

## Servicemembers Opportunity College

University of Maryland University College is a designated four-year Servicemembers Opportunity College (SOC), providing opportunities for men and women serving in the armed forces to complete educational programs by means of various modes of instruction scheduled at times appropriate to their duty assignments. The SOC institutions have also developed a series of common curricula that correspond to Army and Navy career specialties and lead to associate's degrees (SOCAD and SOCNAV-2 programs) and bachelor's degrees (SOCNAV-4 programs). The SOC concept itself was developed jointly by educational representatives from each of the armed services, from the U.S. Department of Defense, and from 13 of the nation's leading associations of higher education.

## Head Start Resource and Training Center

The Head Start Resource and Training Center provides training and technical assistance for Head Start programs in the nation's capital and five nearby states. The organization has several branches. The Region III Resource Center serves the components that cover administration, data management, education, parental involvement, and social services. A separate unit, the National Data Management Project, provides automation support to Head Start programs and to their providers of training and technical assistance nationwide. Resources offered include an electronic bulletin board, conferences and workshops, and handbooks and manuals.

An index to publications, a guide to the audiovisual lending library, and a list of workshops are available. For further information, call 301-985-7840.

## Institute for Research on Adults in Higher Education

The Institute for Research on Adults in Higher Education (IRAHE) monitors methodologies and programs that aim to facilitate learning by adults in colleges and universities. IRAHE is currently implementing two programs, the Diverse Students Program (DSP) and the Effectiveness in Learning Program (ELP).

DSP helps University College and partner institutions increase enrollments of students of color and enhances the educational successes of these students once enrolled. Four other senior colleges

**UNIVERSITY OF MARYLAND UNIVERSITY COLLEGE**

In addition, students must take the capstone course, IFSM 495 Systems Engineering (3), now under development. Students can begin working toward a specialization by pursuing the other course requirements specified above, until IFSM 495 is offered.

## Computer Applications

The discipline of computer applications does not correspond to a primary concentration, nor does it correspond to a specific career field. Courses in this curriculum (designated CAPP) focus on evaluating the effects of computers on society and preparing students to investigate the applications of computers and computerized technologies in various specific fields, such as education, government, social sciences, and management.

For students who have no experience with computing, CAPP 103 or IFSM 201 is appropriate. After completing either of these introductory courses, students may take other courses in computer applications, either for their own interest or as part of a secondary concentration in computer studies. For broader or deeper knowledge of computing, students should consider the curricula of the other three computer disciplines.

## Computer Studies

A primary or secondary concentration in computer studies consists of an interdisciplinary examination of computer technology from various perspectives. With the assistance of an undergraduate academic advisor, the student designs a sequence of logically grouped courses in computer-related topics. Concentrations in computer studies may be composed of courses from the disciplines of computer and information science, computer science, and information systems management.

A primary or secondary concentration in computer studies (which does not correspond to a discipline) allows the student to combine courses from more than one computer-related discipline according to the students particular needs and interests. The primary concentration requires a minimum of 24 semester bouts (including at least 15 semester. hours of upperlevel credit), consisting of courses in computer science (courses designated CMSC), information systems management (courses designated IFSM), and computer and information science (courses designated CMIS). In designing an academic program, students should remember to include the lower-level courses that are prerequisites for the upperdevel courses they intend to take.

## CONCENTRATIONS IN SOCIAL SCIENCES

A primary concentration in the social sciences (behavioral and social sciences, criminology/criminal justice, economics, government and politics, psychology, sociology, and sociology/ anthropology) requires at least one 3-semester-hour course covering statistics. Courses from the list on p. 36 satisfy this requirement.

## PARALEGAL STUDIES DOCUMENT AND CONCENTRATION

Students interested in paralegal studies may complete a document with a 10-course sequence of four required courses and six elective courses in paralegal studies (designated PLGL), plus an additional 30 semester hours of general education courses. Paralegal studies may also be chosen as a primary concentration for a bachelor's or second bachelor's degree. Paralegal studies courses are offered in the traditional classroom setting, as well as through the independent learning format.

## Document in Paralegal Studies

A document is awarded upon successful completion (grade of C or better) of 10 courses in the following sequence:

1.  Four required courses (to be taken in order):

    | | |
    |---|---|
    | PLGL 101 | Introduction to Law for the Paralegal (3) |
    | PLGL 200 | Techniques of Legal Research (3) |
    | PLGL 201 | Legal Writing (3) |
    | PLGL 204 | Legal Ethics/Law-Office Systems (3) |

2.  One prerequisite course, chosen from one of the five areas of specialization listed below.

3.  Three elective courses in the chosen area of specialization.

4.  Two more elective courses, chosen from any area of specialization.

**UNIVERSITY OF MARYLAND UNIVERSITY COLLEGE**

Students earning a document must also satisfy an English requirement by completing ENGL 101 or its equivalent with a grade of C or better. In addition, students must have 30 semester hours of general education courses.

**Specializations Commercial law**

**1. Prerequisite:**
| | |
|---|---|
| PLGL 340 | Contract Law (3) |

**2. Electives:**
| | |
|---|---|
| PLGL 343 | Real-Estate Transactions (3) |
| PLGL 360 | Computer Application in the Legal Environment (3) * |
| PLGL 363A | Computer-Assisted Litigation Support (3) * |
| PLGL 400 | Advanced Legal Research (3) * |
| PLGL 401 | Advanced Legal Writing (3) * |
| PLGL 411 | Consumer-Protection Law (3) * |
| PLGL 434 | Government Contracts (3) * |
| PLGL 442 | Commercial Transactions (3) |
| * PLGL 450 | Bankruptcy Law (3) * |

**Family law**
**1. Prerequisite:**
| | |
|---|---|
| PLGL 315 | Domestic Relations (3) |

**2. Electives:**
| | |
|---|---|
| PLGL 312 | Torts (3) |
| PLGL 316 | Estates and Probate (3) |
| PLGL 325 | Litigation (3) * |
| PLGL 340 | Contract Law (3) * |
| PLGL 343 | Real-Estate Transactions (3) * |
| PLGL 360 | Computer Application in the Legal Environment (3) * |
| PLGL 363A | Computer-Assisted Litigation Support (3) * |
| PLGL 400 | Advanced Legal Research (3) * |
| PLGL 401 | Advanced Legal Writing (3) * |
| PLGL 411 | Consumer-Protection Law (3) |

**Government practice**
**1. Prerequisite:**
| | |
|---|---|
| PLGL 330 | Administrative Law (3) |

**2. Electives:**
| | |
|---|---|
| PLGL 322 | Evidence (3) * |
| PLGL 325 | Litigation (3) * |
| PLGL 360 | Computer Application in the Legal Environment (3) * |
| PLGL 363A | Computer-Assisted Litigation Support (3) * |
| PLGL 400 | Advanced Legal Research (3) |
| PLGL 401 | Advanced Legal Writing (3) * |
| PLGL 431 | Government Information Practices (3) |
| PLGL 432 | Environmental Law (3) |
| PLGL 434 | Government Contracts (3) |

**Litigation**
**1. Prerequisite:**
| | |
|---|---|
| PLGL 325 | Litigation (3) |

**2. Electives:**
| | |
|---|---|
| PLGL 223 | Investigative Techniques (3) |
| PLGL 312 | Torts (3) * |
| PLGL 320 | Criminal Law and Procedures (3) |
| PLGL 321 | Economic-Crime Investigation (3) |
| PLGL 322, | Evidence (3) |
| PLGL 340 | Contract Law (3) * |

**UNIVERSITY OF MARYLAND UNIVERSITY COLLEGE**

| | |
|---|---|
| PLGL 360 | Computer Application in the Legal Environment (3) * |
| PLGL 363A | Computer-Assisted Litigation Support (3) * |

**Tax law**
**1. Prerequisite:**

| | |
|---|---|
| PLGL 350 | Income-Tax Law (3) |

**2. Electives:**

| | |
|---|---|
| PLGL 322 | Evidence (3) * |
| PLGL 325 | Litigation (3) * |
| PLGL 330 | Administrative Law (3)* |
| PLGL 340 | Contract Law (3) * |
| PLGL 351 | Pension Law (3) |
| PLGL 360 | Computer Application in the Legal Environment (3) * |
| PLGL 363A | Computer-Assisted Litigation Support (3) * |
| PLGL 450 | Bankruptcy Law * |

## Concentration in Paralegal Studies

The requirements for a concentration in paralegal studies differ from those for a document. Students seeking a degree (instead of or in addition to a document) should consult an undergraduate academic advisor to be sure of meeting all the requirements.

* Recommended to complete this area of specialization.

Case 3:10-cv-02333-B   Document 1   Filed 11/16/10   Page 52 of 112   PageID 52

# School of Undergraduate Studies

## Certificate in Paralegal Studies

**Also available online**

The paralegal studies certificate focuses on the legal concepts, procedures and skills used in a wide variety of legal environments. The program addresses the organization, functions and processes of institutions in the U.S. legal system, roles and issues in the paralegal field, legal ethics and selected specialty areas. The curriculum emphasizes important skills, including legal analysis, communication, legal research, computer competence, legal drafting, investigation, organization and specialized legal skills. With appropriate choice of courses, this certificate may be completed while pursuing the Bachelor of Science in legal studies. (However, students may not pursue the paralegal studies certificate within the associate of arts curriculum in legal studies.) No more than 12 credits in certificate courses may be earned through transfer or prior-learning credit.

**Total Credits: 60**

**General education and other college coursework (36)**

This requirement may be fulfilled through transfer credit, and up to 30 credits may be earned through credit by examination or prior-learning portfolio credit. Total must include 18 credits in general education courses covering at least three different disciplines and WRTG 101/101X (unless the student already has earned an associate's or bachelor's degree before taking the first legal studies course). No more than six 1-credit courses may be applied toward this certificate.

**Note:** Courses may be applied to only one certificate; some prerequisites may need to be fulfilled before beginning certificate courses.

**Four required legal studies courses:**

- LGST 101 - Introduction to Law (3)
- LGST 200 - Techniques of Legal Research (3)
- LGST 201 - Legal Writing (3)
- LGST 204 - Legal Ethics (3)

**A general practice procedure and legal skills elective chosen from the following (3):**

- LGST 320 - Criminal Law and Procedures
- LGST 322 - Evidence
- LGST 325 - Litigation
- LGST 400 - Advanced Legal Research and Analysis
- LGST 401 - Advanced Legal Writing

**A general practice substantive law elective chosen from the following (3):**

- LGST 312 - Torts
- LGST 315 - Domestic Relations
- LGST 316 - Estates and Probate
- LGST 340 - Contract Law
- LGST 442 - Business Organizations

**A supporting elective or electives totaling 3 credits chosen from any LGST course (3)**

Certificate in Paralegal Studies - School of Undergraduate Studies - UMUC

A supporting elective or electives totaling 3 credits chosen from any LGST course (3)



P.O. Box 6180
Indianapolis, IN 46206-618
Fax: (317) 594 1014

## COMPROMISE AUTHORIZATION

| Date: 5/12/04 | | Collection Agency Windham Professionals, Inc. | Fax Number: 1-877-496-4773 |
|---|---|---|---|
| Borrower Name: Joe Johnson Jr. | | Social Security Number: | |

| Default Purchase Date: 1/31/97 | Loan Amount Disbursed: $10125.00 | Purchase Amount/Interest Rate: $11533.53 / 4.22% |
|---|---|---|
| Daily Interest Accrual: 1.32978 | Total Payments Prior to Offer: N/A | Last Payment Date: N/A |

Outstanding Balance:
Principal $ 11533.53     + Interest $ 5964.39     + Collection Cost $ 3458.88     Total $ 20956.80

**Compromise Conditions/Comments:**

Joe is out of work and in a financial bind. Several family members are willing to help him out. He will have around $18000.00, which would be approximately 86%.

| Final Settlement Offer: $18000.00 | % of Total Principal/Interest/Collection Cost: 86.00% |
|---|---|

Due Date of Payment: 6/11/04    6 / 30 /04 est

Total Gross Recoveries After Payment Applied:
$18000.00

**Amount Compromised: (For Sallie Mae Use Only)**

Principal $ 2,377.92 + Interest $ _____ Collection Cost $ 578.88 Total $ 2,956.80

Approved By:
Portfolio Management Manager ___Douglas E. ___ Date 5/13/04

| Compromise Request Denied By: | Date Denied: |
|---|---|
| Counter-offer Amount: | Due Date of Counter-offer: |

*Edward F. Strack*

Edward F. Strack
Vice President of Sallie Mae Servicing. L.P.
As authorized agent for United Student Aid Funds, Inc.



STATEMENT OF ACCOUNT

THE UNIVERSITY OF MARYLAND UNIVERSITY COLLEGE
OFFICE OF THE BURSAR - SFSC, ROOM 2241
3501 UNIVERSITY BLVD, EAST
ADELPHI, MD 20783
TUE, OCT 26, 2010                 (301)-985-7404                    PAGE   1

```
          JOHNSON JR  JOE                    ID NUM:
          607 AUDREY LANE                    PREFIX:    04
          APARTMENT #102                     COLLEGE:   10
          OXON HILL  MD 20745                HOME:     (301) 839-0172
                                             OFFICE:   (999) 999-9999
```

**************************************************************************

COURSE REGISTRATION

| COURSE | SECT | DESCRIPTION | CR GM BEGIN DATE | TIME/DAY | BLD | ROOM |
|--------|------|-------------|------------------|----------|-----|------|
| PLGL325 | 2600 | ***************** 3 | | | | |
| PLGL204 | 2600 | CORRECT | | | | |
| PLGL204 | 2601 | CANCLED | | | | |
| PLGL204 | 2600 | ***************** 3 | | | | |
| ENGL101 | 6900 | WD  50% | | | | |

**************************************************************************

| TRANS DATE | DESCRIPTION | SEM | CHARGES | PAYMENTS |
|------------|-------------|-----|---------|----------|
| 960118 | PLGL325 2600 | 9602 | 522.00 | |
| 960118 | PLGL204 2600 | 9602 | 522.00 | |
| 960123 | FED SUB DIR LOAN | 9602 | | 168.00 |
| 960123 | FED UNS DIR LOAN | 9602 | | 1,920.00 |
| 960123 | FED DIRECT LN REFUND | 9602 | 1,044.00 | |
| 960125 | ADJ-FED SUB DIR LOAN | 9602 | 168.00 | |
| 960125 | FED SUB DIR LOAN | 9602 | | 1,680.00 |
| 960125 | FED DIRECT LN REFUND | 9602 | 1,512.00 | |
| 960129 | PLGL204 2601 | 9602 | 522.00 | |
| 960129 | CORRECT-PLGL204 2600 | 9602 | | 522.00 |
| 960129 | ENGL101 6900 | 9602 | 522.00 | |
| 960206 | CANCLED-PLGL204 2601 | 9602 | | 522.00 |
| 960206 | PLGL204 2600 | 9602 | 522.00 | |
| 960211 | WD  50%-ENGL101 6900 | 9602 | | 261.00 |
| 960628 | TRANSFER TO SCCU | 9602 | | 261.00 |





# LOAN DISCHARGE APPLICATION:  FALSE CERTIFICATION (DISQUALIFYING STATUS)

**Federal Family Education Loan Program / William D. Ford Federal Direct Loan Program**

**WARNING:** Any person who knowingly makes a false statement or misrepresentation on this form or on any accompanying documents will be subject to penalties that may include fines, imprisonment or both, under the U.S. Criminal Code and 20 U.S.C. 1097.

OMB No. 1845-0015
Form Approved
Exp. Date 10/31/2011

## SECTION 1:  BORROWER IDENTIFICATION

| Last Name | First Name | Middle Initial | Social Security Number |
|---|---|---|---|

| Street Address | | Area Code/Telephone Number (Home) ( ) |
|---|---|---|
| | | Area Code/Telephone Number (Other) ( ) |

| City | State | Zip Code | E-mail Address (optional) |
|---|---|---|---|

## SECTION 2:  STUDENT INFORMATION

*Before completing this section, carefully read the entire form, including the instructions, definitions, and terms and conditions in Sections 4, 5, and 6 on this form.  If you are a student borrower applying for loan discharge, begin with Item 3.  If you are a parent borrower applying for a PLUS loan discharge, begin with Item 1.*

1. Student Name (Last, First, MI): _____

2. Student SSN: |___|___|___|-|___|___|-|___|___|___|___|

3. School Name: _____

4. School Address (street, city, state, zip code): _____

5. Dates of attendance at the school:  From |___|___|-|___|___|-|___|___|___|___| To |___|___|-|___|___|-|___|___|___|___|

6. Name of the program of study that you (or, for parent PLUS borrowers, the student) were enrolled in when the school certified or originated the loan that you are requesting to have discharged: _____

7. To qualify for a loan discharge based on false certification due to a disqualifying status, you (or, for parent PLUS borrowers, the student) must have been unable – at the time the school certified or originated your loan – to meet the **legal requirements for employment** in your state of residence (or, for parent PLUS borrowers, in the student's state of residence) in the occupation for which the program of study was intended because of age, a physical or mental condition, criminal record, or other reason.  Indicate your disqualifying status by checking the appropriate box(es) below:

☐ Age      ☐ Physical condition      ☐ Mental condition      ☐ Criminal record      ☐ Other (please specify): _____

> **Important:**  You must provide documentation to prove that you (or, for parent PLUS borrowers, the student) had the disqualifying status at the time the school certified or originated your loan.  **Also, provide as much information as possible about the state legal requirements for employment that you (or, for parent PLUS borrowers, the student) could not meet.  Include the title and/or section number of the specific state law or regulation, or attach a copy of the law or regulation.**  You may obtain this information from the appropriate state agency, such as the consumer protection office or department of labor and employment, from a public library, or from an Internet site that contains state laws and regulations.
>
> _____
>
> _____

8. (a) Before certifying or originating the loan, did the school ask you (or, for parent PLUS borrowers, the student) if the disqualifying status explained in Item 7 existed?  ☐ Yes  ☐ No  ☐ Don't Know

   (b) Did you (or, for parent PLUS borrowers, the student) inform the school of the disqualifying status before the loan was certified or originated?
   ☐ Yes  ☐ No

9. Did the holder of your loan receive any money back (a refund) from the school on your behalf?  ☐ Yes  ☐ No  ☐ Don't Know
   If Yes, give the amount and explain why the money was refunded: _____

10. Did you (or, for parent PLUS borrowers, the student) make any monetary claim with, or receive any payment from, the school or any third party (see definition in Section 5) in connection with enrollment or attendance at the school?  ☐ Yes  ☐ No  ☐ Don't Know      If Yes, please provide the following information:
(a) Name/address/telephone number of the party with whom the claim was made or from whom payment was received: _____

(b) Amount/status of claim: _____    (c) Amount of payment received:  $ _____
                                                            (Write "none" if no payment was received.)

## SECTION 3:  BORROWER CERTIFICATION

My signature below certifies that I have read and agree to the terms and conditions that apply to this loan discharge, as specified in Section 6 on the following page.  Under penalty of perjury, I certify that all of the information I have provided on this form and in any accompanying documentation is true and accurate to the best of my knowledge and belief.

**Borrower's Signature:** _____    **Today's Date:** _____

## SECTION 4:  INSTRUCTIONS FOR COMPLETING THE APPLICATION

Type or print using dark ink.  Enter dates as month-day-year (mm-dd-yyyy).  Use only numbers.  Example: June 24, 2006 = 06-24-2006.  If you need more space to answer any of the items, continue on separate sheets of paper and attach them to this form.  Indicate the number of the item(s) you are answering and include your name and social security number (SSN) on all attached pages.

*Sign and date the form, then send the completed form and any attachments to the address in Section 8.*

## SECTION 5:  DEFINITIONS

- The **Federal Family Education Loan (FFEL) Program** includes Federal Stafford Loans (both subsidized and unsubsidized), Federal Supplemental Loans for Students (SLS), Federal PLUS Loans, and Federal Consolidation Loans.
- The **William D. Ford Federal Direct Loan (Direct Loan) Program** includes Federal Direct Stafford/Ford Loans (Direct Subsidized Loans), Federal Direct Unsubsidized Stafford/Ford Loans (Direct Unsubsidized Loans), Federal Direct PLUS Loans (Direct PLUS Loans), and Federal Direct Consolidation Loans (Direct Consolidation Loans).
- The **holder** of a borrower's FFEL Program loan(s) may be a lender, a guaranty agency, or the U.S. Department of Education (the Department).  The holder of a borrower's Direct Loan Program loan(s) is the Department.
- **Loan discharge** due to false certification (disqualifying status) cancels the obligation of a borrower (and endorser, if applicable) to repay the remaining balance on a FFEL Program or Direct Loan Program loan, and qualifies the borrower for reimbursement of any amounts paid voluntarily or through forced collection on the loan.  For consolidation loans, only the amount of the underlying loans (the loans that were consolidated) that were used to pay for the program of study listed in Item 6 would be considered for discharge.  The loan holder reports the discharge to all credit reporting agencies to which the holder previously reported the status of the loan.
- The **student** refers to the student for whom a parent borrower obtained a Federal PLUS Loan or Direct PLUS Loan.
- **Program of study** means the instructional program leading to a degree or certificate in which you (or, for parent PLUS borrowers, the student) were enrolled.
- **Certification and origination** are steps in a school's processing of a loan.  In the FFEL Program, a loan is **certified** when the school signs a loan application or submits an electronic loan record to the lender or guaranty agency after determining that the borrower meets all loan eligibility requirements.  In the Direct Loan Program, a loan is **originated** when the school creates an electronic loan origination record after determining that the borrower meets all loan eligibility requirements.
- **Third party** refers to any entity that may provide reimbursement for a refund owed by the school, such as a State or other agency offering a tuition recovery program or a holder of a performance bond.

## SECTION 6:  TERMS AND CONDITIONS FOR LOAN DISCHARGE BASED ON FALSE CERTIFICATION (DISQUALIFYING STATUS)

- I received FFEL or Direct Loan program loan funds on or after January 1, 1986, to attend (or, if I am a parent PLUS borrower, for the student to attend) the school identified in Section 2 of this form.  Those funds were either received by me directly, or applied as a credit to the amount owed to the school.
- I will provide, upon request, testimony, a sworn statement, or other documentation reasonably available to me that demonstrates to the satisfaction of the Department or its designee that I meet the qualifications for loan discharge based on false certification (disqualifying status), or that supports any representation that I made on this form or on any accompanying documents.
- I agree to cooperate with the Department or its designee regarding any enforcement actions related to my request for loan discharge.
- I understand that my request for loan discharge may be denied, or my discharge may be revoked, if I fail to provide testimony, a sworn statement, or documentation upon request, or if I provide testimony, a sworn statement, or documentation that does not support the material representations I have made on this form or on any accompanying documents.
- I further understand that if my loan(s) is discharged based on any false, fictitious, or fraudulent statements that I knowingly made on this form or on any accompanying documents, I may be subject to civil and criminal penalties under applicable federal law.
- I hereby assign and transfer to the Department any right to a refund on the discharged loan(s) that I may have from the school identified in Section 2 of this form and/or any owners, affiliates, or assigns of the school, and from any third party that may pay claims for a refund because of the actions of the school, up to the amount discharged by the Department on my loan(s).

## SECTION 7:  IMPORTANT NOTICES

**Privacy Act Disclosure Notice:** The Privacy Act of 1974 (5 U.S.C. 552a) requires that the following notice be provided to you:

The authorities for collecting the requested information from and about you are §421 *et seq.* and §451 *et seq.* of the Higher Education Act of 1965, as amended (20 U.S.C. 1071 *et seq.*, and 20 U.S.C. 1087a *et seq.*) and the authorities for collecting and using your Social Security Number (SSN) are §§428B(f) and 484(a)(4) of the HEA (20 U.S.C. 1078-2(f) and 20 U.S.C. 1091(a)(4)) and 31 U.S.C. 7701(b).  Participating in the Federal Family Education Loan (FFEL) Program or the William D. Ford Federal Direct Loan (Direct Loan) Program and giving us your SSN are voluntary, but you must provide the requested information, including your SSN, to participate.

The principal purposes for collecting the information on this form, including your SSN, are to verify your identity, to determine your eligibility to receive a loan or a benefit on a loan (such as a deferment, forbearance, discharge, or forgiveness) under the FFEL and/or Direct Loan Programs, to permit the servicing of your loan(s), and, if it becomes necessary, to locate you and to collect and report on your loan(s) if your loan(s) become delinquent or in default.  We also use your SSN as an account identifier and to permit you to access your account information electronically.

The information in your file may be disclosed, on a case-by-case basis or under a computer matching program, to third parties as authorized under routine uses in the appropriate systems of records notices.  The routine uses of this information include, but are not limited to, its disclosure to federal, state, or local agencies, to private parties such as relatives, present and former employers, business and personal associates, to consumer reporting agencies, to financial and educational institutions, and to guaranty agencies in order to verify your identity, to determine your eligibility to receive a loan or a benefit on a loan, to permit the servicing or collection of your loan(s), to enforce the terms of the loan(s), to investigate possible fraud and to verify compliance with federal student financial aid program regulations, or to locate you if you become delinquent in your loan payments or if you default.  To provide default rate calculations, disclosures may be made to guaranty agencies, to financial and educational institutions, or to state agencies.  To provide financial aid history information, disclosures may be made to educational institutions.  To assist program administrators with tracking refunds and cancellations, disclosures may be made to guaranty agencies, to financial and educational institutions, or to federal or state agencies.  To provide a standardized method for educational institutions to efficiently submit student enrollment status, disclosures may be made to guaranty agencies or to financial and educational institutions.  To counsel you in repayment efforts, disclosures may be made to guaranty agencies, to financial and educational institutions, or to federal, state, or local agencies.

In the event of litigation, we may send records to the Department of Justice, a court, adjudicative body, counsel, party, or witness if the disclosure is relevant and necessary to the litigation.  If this information, either alone or with other information, indicates a potential violation of law, we may send it to the appropriate authority for action.  We may send information to members of Congress if you ask us to help you with federal student aid questions.  In circumstances involving employment complaints, grievances, or disciplinary actions, we may disclose relevant records to adjudicate or investigate the issues.  If provided for by a collective bargaining agreement, we may disclose records to a labor organization recognized under 5 U.S.C. Chapter 71.  Disclosures may be made to our contractors for the purpose of performing any programmatic function that requires disclosure of records.  Before making any such disclosure, we will require the contractor to maintain Privacy Act safeguards.  Disclosures may also be made to qualified researchers under Privacy Act safeguards.

**Paperwork Reduction Notice:** According to the Paperwork Reduction Act of 1995, no persons are required to respond to a collection of information unless it displays a currently valid OMB control number.  The valid OMB control number for this information collection is 1845-0015.  The time required to complete this information collection is estimated to average 0.5 hours (30 minutes) per response, including the time to review instructions, search existing data resources, gather and maintain the data needed, and complete and review the information collection.  **If you have any comments concerning the accuracy of the time estimate(s) or suggestions for improving this application, please write to:**  U.S. Department of Education, Washington, DC 20202-4537

*If you have questions regarding the status of your individual submission of this application, contact your loan holder (see Section 8).*

## SECTION 8:  WHERE TO SEND THE COMPLETED LOAN DISCHARGE APPLICATION

| | |
|---|---|
| *Send the completed loan discharge application and any attachments to:*<br>**U.S. Department of Education**<br>**Direct Loan Servicing Center**<br>**P.O. Box 5609**<br>**Greenville, TX 75403-5609** | *If you need help completing this form, call:*<br>If you need help completing this form, call:  **1-800-848-0979**<br>If you use a telecommunications device for the deaf (TDD), call:<br>**1-800-848-0983**<br>Direct Loan Servicing Center web site:  **www.dl.ed.gov** |



Case 3:10-cv-02333-B    Document 1    Filed 11/16/10    Page 62 of 112    PageID 62



Contact Us | Privacy Policy | Site Map | Login

| | Search |

HOME    YOUR ACCOUNT    QUESTION CENTER    FORMS

**Deferments**

List of Forms
Action Programs
Armed Forces
Economic Hardship
Graduate Fellowship Program
In-School
Internship/Residency Program
Military
NOAA
Parental Leave
Peace Corps
Parent Direct PLUS Loan In-
School Deferment (Loans
Disbursed on or after July 1,
2008)
PLUS - In-School (FFEL
disbursed before 07/01/1993)
PLUS - Rehabilitation
Public Health Service
Rehabilitation Training
Tax Exempt Organization
Teacher Shortage Area
Temporary Total Disability
Unemployment
Working Mother
**Forbearances**

List of Forms
Americorps (CNCS)
General Forbearance
Internship/Residency
Loan Debt Burden
Teacher Loan Forgiveness
**Loan Consolidation Forms**

List of Forms
Application and Promissory Note
Cover Letter - Consolidation
Package
Instructions for Application and
Promissory Note
Mailing Instructions
Additional Loan Listing Sheet
Repayment Plan Selection (RPS)
Form (Consolidation Address on
form)
Consent to Disclosure of Tax
Information (Consolidation
Address on form)
Alternative Documentation of
Income (Consolidation Address
on form)
Request to add a loan
**TEACH Grant Forms**

List of Forms
TEACH Grant Certification

# Other Forms Requirements

**False Certification Disqualifying Status Discharge**

< Back to Other Forms List    [ Download Blank Form ]

**Eligibility Requirements**

**Frequency:** If you think you are eligible for this type of loan discharge

**Requirements:**

1. You received Direct Loan or FFEL Program loan funds on or after January 1, 1986, to attend (or, if you are a parent PLUS borrower, for the student to attend) the school you identify in Section 2 of the form. Those funds were either received by you directly, or applied as a credit to the amount owed to the school.

2. At the time the school certified or originated your loan, you (or, for parent PLUS borrowers the student) were unable to meet the legal requirements for employment in your state of residence (or, for parent PLUS borrowers the student state of residence) in the occupation for which the program of study was intended because of age, a physical or mental condition, criminal record or other reason.

3. You will provide, upon request, testimony, a sworn statement, or other documentation reasonably available to you that demonstrates to the satisfaction of the Department or its designee that you meet the qualifications for loan discharge based on false certification (disqualifying status), or that supports any representation that you make on the form or on any accompanying documents.

4. You agree to cooperate with the Department or its designee regarding any enforcement actions related to your request for loan discharge.

5. You assign and transfer to the Department any right to a refund on the discharged loans that you may have from the school you identify in Section 2 of the form and/or any owners, affiliates, or assigns of the school, and from any party that may pay claims for a refund because of the actions of the school, up to the amounts discharged by the Department on your loan(s).

**Certifications/Documents Required**



**Other Forms**

List of Forms
Alternative Documentation of
Income
Closed School Discharge
Consent to Disclosure Tax
Information
Electronic Debit Account (EDA)
False Cert. of Ability to Benefit
Discharge
False Cert. Disqualifying Status
Discharge
False Certification Identity Theft
Family Size Certification (Income-
Based Repayment (IBR) Plan)
Public Service Loan Forgiveness
Repayment Plan selection
Teacher Loan Forgiveness
Total and Perm. Disability
Discharge Request
Unauthorized Signature/Payment
Discharge
Unpaid Refund Discharge

- Complete, sign and date your form and send it to:

  **Direct Loan Servicing Center**
  Borrower Services Department
  P.O. Box 5609
  Greenville, TX 75403-5609

- Include with your application the information described below:

  ○ Provide as much information as possible about the state legal requirement for employment that you (or, for parent PLUS borrowers, the student) could not meet; you must include the name and/or section number of the specific state law or regulation, or attach a copy of the law or regulation (you may obtain a copy from the appropriate state agency, such as the consumer protection office or department of labor and employment, or from a public library).

  ○ Also provide documentation that proves that you (or, for parent PLUS borrowers, the student) had the disqualifying status at the time of loan certification/origination.

  [ Download Blank Form ]

  Back to Other Forms List

https://www.dl.ed.gov/borrower/OtherFormList.do?cmd=doViewRequirements&wizardNa...   11/5/2010





LAW OFFICES

WEINSTOCK, FRIEDMAN & FRIEDMAN, P.A.

EXECUTIVE CENTRE
4 RESERVOIR CIRCLE
BALTIMORE, MD 21208-7301

410-559-9000
FAX: 410-559-9009
NORTHERN VA, DC & MD SUBURBS
800-999-8286

WWW.WEINSTOCKLEGAL.COM

April 14, 2009

**Partners**
Henry S. Friedman (MD, DC)
Jeffrey M. Lippman (MD, DC)

Edward J. Friedman (1951-2005)

**Of Counsel**
Mervin J. Weinstock
Marc E. Brach
J C Amos (MD, WV)
Alan Heinrich

**Managing Attorneys**
Lona M. Fisher
William H. Tisdale, Jr. (MD, DC)

**Attorneys**
Greg I. Ross (MD, DC, PA, VA)
Michael W. Moore (MD, DC)
Craig A. Schoenfeld
Cherise Gass
Shannon B. Kinnrock (MD, DC)
H. Jeffrey Zeigler (MD, DC)
Denise L. Kinnard
John R. Rombach
Jason E. Solomon (MD, DC)
Owen Blum (MD, DC)
Rebecca A. Carter
Jamie B. Glick (MD, DC)
Kimberly A. Bakich
Victor A. Limaco
Melissa L. Frentz
Lisa L. Gering (MD, DC)
Darlene T. Davies
Jordan I. Bilzer (MD, DC)
D. William Brooks (MD, DC)
Brian A. Phillips (MD, MA, Jamaica)
Rosemary E. Allius
Brian Greuter
Loretta Townsend (MD, NY)
Brian C. Scanlon

Department of Education
830 1st Street, NE
Washington, D.C. 20202

        RE:   **Joseph Johnson - Loan Discharge**
              Our Intake No.: 591991

Dear Sir or Madam:

    Please be advised that this office has been requested by Mr. Joseph Johnson to contact you regarding the above-referenced matter. Please be advised that Mr. Johnson has requested a loan discharge pursuant to 34 CFR 685.215(a), due to false certification. Pursuant to your letter of September 6, 2007, you denied Mr. Johnson's loan discharge stating that there were no records to indicate he was enrolled in a training program that specifically and exclusively prepared him for employment in law office or as a paralegal.

    Enclosed for your consideration please find Mr. Johnson's University of Maryland University College tentative evaluation as of February 6, 1995. Also included is an e-mail from Tom Lock, Advisor Associate at University of Maryland University College, indicating Mr. Johnson's enrollment at UMUC. Lastly, please find an e-mail from Dr. William W. Sondervan, Professor and Director of the Criminal Justice, Investigative Forensics and Legal Studies at University of Maryland, University College indicating that the paralegal studies that Mr. Johnson was pursuing at UMUC were specifically designed for students seeking a job in the legal field.

    Please reconsider your decision to deny Mr. Johnson's loan discharge. If you require any additional information, please feel free to contact me. Thank you for your prompt attention and cooperation.

           Very truly yours,

           WEINSTOCK, FRIEDMAN & FRIEDMAN, P.A

           Brian Greuter

BG/mm
enclosures
cc:   Mr. Joseph Johnson
      2600 Brinkley Road, #1005
      Fort Washington, MD 20744-1908





DEC 11 2009

Mr. Brian Greuter
Weinstock, Friedman & Friedman, P.A.
Executive Centre
4 Reservoir Circle
Baltimore, MD  21208-7301

Dear Mr. Greuter:

Thank you for your inquiry about federal student aid.

You explain that you represent Mr. Joseph Johnson (your intake: 591991) and that he requests cancellation of his William D. Ford Federal Direct Loan (Direct Loan) account under the false certification provision.

You enclose a Sept. 6, 2007 letter from the U.S. Department of Education explaining specifically why Mr. Johnson's cancellation request was previously denied. If Mr. Johnson has additional documentation that he believes supports his requests and that he did not provide at that time, he should submit it directly to the Direct Loan Servicing Center at

> Direct Loan Servicing Center
> Borrower Services Department
> P.O. Box 5609
> Greenville, TX  75403-5609
>
> 1-800-848-0979
>
> Web site: www.dl.ed.gov

Page 2 - Mr. Brian Greuter

I hope this information is helpful.

Sincerely,

Michele Y. Brown
Director
Applicant Products and
Customer Service Division
Federal Student Aid
U.S. Department of Education

## AFFIDAVIT IN SUPPORT OF
## RECONSIDERATION OF DISCHARGE

I, Joseph Johnson, Jr., state that:

1.      I am over the age of 18 and am competent to testify to the matters stated herein.

2.      I previously requested a discharge of Federal Direct student loans under the False
Certification Disqualifying Status statute on the basis that I could not meet the requirements
established by State law for employment in my field of study as a Paralegal because of my
criminal record and incarceration status.

3.      By final agency decision dated September 6, 2007, the discharge was denied
because I failed to submit records that indicated that I was enrolled in a training program that
specifically and exclusively prepared me for employment as a paralegal. See Attachment 1.

4.      Following that decision, on February 4, 2009, I wrote to Mr. Tom Lock, Advisor
Associate, Undergraduate Advising at the University of Maryland University College
("UMUC") and he reviewed the school's records and found that when I was first enrolled at
UMUC in the Fall 1993 through the Spring 1996, I had a declared primary of "paralegal studies",
with a criminal justice secondary. See Attachment 2.

5.      On February 4, 2009, I wrote to and had a conversation with Dr. William W.
Sondervan, Professor and Director, Criminal Justice, Investigative Forensics and Legal Studies at
UMUC, and he stated that the Paralegal program was a 60 credit certificate which was embedded
in the legal studies BS program that "specifically and exclusively prepared students to be a
paralegal". See Attachment 3.

6.      In addition, on February 4, 2009, I also wrote to and had a conversation with
Cheryl Heberlig, Customer Service Team at UMUC, and she also stated that the Paralegal
program is a certificate program and that "at the completion of the Program, you should be able

to obtain employment as a Paralegal" and that the Paralegal program offered by UMUC specifically and exclusively train students to be Paralegals. See Attachment 4.

7.    I also wrote to and had a conversation with Pamela Zimmerman, Customer Service Team at UMUC, and she also stated and confirmed that the UMUC Paralegal studies program that I was enrolled train students to be a Paralegal and that "students learn the skills need to become a paralegal." See Attachment 5.

8.    Based on this additional documentation, I am requesting that the student loans be discharged pursuant to 34 C.F.R. §685.215(a).

I hereby state under penalty of perjury that the foregoing is true and correct to the best of my knowledge, information and belief pursuant to section 1746 of title 28.


December 24, 2009                          _Joseph Johnson, Jr._
                                          Joseph Johnson, Jr.


2

# EXHIBIT 1



September 6, 2007

Mr. Joseph Johnson
607 Audrey Lane, #102
Oxon Hill, MD 20745

                              Re:      Loan Discharge Appeal

Dear Mr. Johnson:

         This responds to your letters to me dated May 15 and June 26, 2007. You
requested discharge of Federal Direct student loans under False Certification,
Disqualifying Status, asserting you could not meet requirements established by State law
for employment in your field of study. On two separate occasions, our Direct Loan
servicer denied your application. You wish to appeal those decisions, asserting that
Direct Loans used an invalid basis for denial.

         The Higher Education Act of 1965, as amended (HEA), establishes discharge
requirements under the circumstances you describe. These requirements are
implemented through regulation at 34 C.F.R. 685.215(a), which states:

         Basis for discharge — (1) False certification. The Secretary discharges a
         borrower's (and any endorser's) obligation to repay a Direct Loan in accordance
         with the provisions of this section if a school falsely certifies the eligibility of the
         borrower (or the student on whose behalf a parent borrowed) to receive the loan.
         The Secretary considers a student's eligibility to borrow to have been falsely
         certified by the school if the school—

                  (iii) Certified the eligibility of a student who, because of a physical or
                  mental condition, age, criminal record, or other reason accepted by the
                  Secretary, would not meet the requirements for employment (in the
                  student's State of residence when the loan was originated) in the
                  occupation for which the training program supported by the loan was
                  intended.

To be eligible for discharge, the borrower must provide convincing documentation that
supports the discharge request.

                         830 First St. N.E., Washington, DC 20202
                               www.FederalStudentAid.ed.gov
                                      1-800-4-FED-AID

FEDERAL STUDENT AID 🎯 START HERE. GO FURTHER.

Mr. Joseph Johnson
September 6, 2007
Page 2 of 3

    To support your eligibility for this discharge, you provided a narrative; copies of court documents showing your convictions; dates of incarceration; and State laws you deemed relevant to your circumstance. While your application simply states that your program of study was law, your narrative makes reference to employment in three specific areas: law enforcement, with emphasis on your inability to obtain a license to carry a firearm; admission to the Maryland State Bar to practice law; and as a paralegal.

    Based on my review of the documents you provided, federal regulations governing discharge of student loans, and records available to me, you do not meet the criteria for discharge on the basis of False Certification, Disqualifying Status. The basis for my determination is as follows:

    There are no records that indicate you were enrolled in a training program that specifically and exclusively prepared you for employment in law enforcement or as a paralegal, nor were you enrolled in law school.

    Although my basis for determining that you would not be eligible for discharge differs from that provided by Direct Loans, that denial is upheld.

                Sincerely,

                Jeff Baker
                Director
                Policy Liaison and Implementation

C:    Direct Loans

# EXHIBIT 2

| | |
|---|---|
| From: | Walter Lock [WLock@umuc.edu] |
| Sent: | Thursday, February 05, 2009 3:23 PM |
| To: | Joe Johnson |
| Subject: | re: Enrollment |

Hi Joe,

When you were first enrolled at UMUC in the Fall 1993 through the Spring 1996; you had a declared primary of paralegal studies, with a criminal justice secondary.

After you were re-admitted in the Fall 2005 through the Summer 2007; you were pursuing a legal studies major and an English minor.

Should you have any questions or concerns please feel free to contact me.
*Reminder: Please include your student ID with all correspondence*

Sincerely,


Tom Lock
Advisor Associate
Undergraduate Advising Center
University of Maryland University College
3501 University Blvd. East
Adelphi, MD 20783
800) 888-8682, ext. 7555
(301) 985-7555
Fax: 301-985-7977
wlock@umuc.edu
—————— Original Message ——————

From: Joe Johnson <joe.johnson@namst.com> (By way of gmtsam@umuc.edu) (By way of ucadvising@umuc.edu)
To: Walter Lock <WLock@umuc.edu>
Date: Thu, 5 Feb 2009 10:24:31 -0500
Subject: Enrollment


I was enrolled at the UMUC as an undergraduate at UMUC beginning in 1993. I need to know what program I was enrolled in while I attended UMUC. My student ID# is        , DOB:        , SSN:

Please let me know if you require additional information.

# UNIVERSITY OF MARYLAND UNIVERSITY COLLEGE
## 1993-94 COLLEGE CATALOG

- Catalog conversion notes

# CollegeSource®
by Career Guidance Foundation

UNIVERSITY OF MARYLAND UNIVERSITY COLLEGE

ENGL 391, or HUMN 221) or have equivalent experience before enrolling. For further information, call 301-985-7722.

**National Universities Degree Consortium**
Students may now earn a bachelor's degree from University College by taking courses broadcast via cable and satellite. This opportunity, coordinated through the Open Learning program, is made available through the National Universities Degree Consortium (NUDC), a group of ten universities across the nation that have combined their resources to provide a degree-completion program by electronic means.

Sharing a common mission to extend education beyond the boundaries of individual institutions, the member universities work to develop course materials, including video lessons, that enable students to work independently. The video programs are televised through the Mind Extension University: The Education Network (ME/U), a cable and satellite distribution network.

The coursework for the degree being offered, which features a concentration in management, integrates contemporary theory and practice in that field. Among major topics covered in the courses are the global character of business today, management of diversity, leadership, problem solving and critical thinking, communication skills, ethics in business, and planning and competitive strategies.

Related upper-level courses outside of the primary concentration are provided through the other nine universities. Credit for those courses may be used toward a degree from University College. The other participating universities are California State University at Long Beach, Colorado State University, Kansas State University, the University of New Orleans, the University of Oklahoma, Oklahoma State University, the University of South Carolina, Utah State University, and Washington State University.

For more information about NUDC, call Mind Extension University (800-777-MIND) or the coordinator for independent learning at University College (301-985-7722).

**Prior Learning**
The Prior Learning office offers students two means of obtaining credit for previous study or for prior experiences beyond the classroom. One approach, the course-challenge examination, permits students to take comprehensive tests on material learned outside the classroom that is generally presented in college courses. A test is prepared individually for the student who requests it. The other approach, EXCEL through Experiential Learning, allows students to earn credit for college-level knowledge acquired in work and life experiences. After being admitted to the EXCEL program, students enroll in a course that requires them to prepare a portfolio of relevant experiences. The portfolio is evaluated by faculty specialists for possible credit. This course is also offered in the independent learning format. For further information, call 301-985-7755.

**Cooperative Education**
Students who take advantage of Cooperative Education (Coop) enjoy a unique opportunity to combine on-the-job experience with classroom learning. Students enroll in specially structured, personalized courses in which they earn upper-level academic credit integral to the bachelor's degree. Co-op enables students to learn new marketable skills while accumulating work experience in professional positions directly related to each student's particular curriculum at University College. The Co-op staff is available to help students find suitable positions in various career fields and to assist students in the process of self-direction. Students seeking job placement do not officially enroll in Co-op until appropriate positions have been found for them. For further information, call 301-985-7780.

**Paralegal Studies**
Law-related courses available in paralegal studies prepare students for positions in law firms, government agencies, corporations, and trade associations, as well as in banking and real estate. Paralegal courses are offered in College Park, Annapolis, Shady Grove, and Washington, D.C. They are also offered in the independent learning format. Courses are taught by practicing attorneys, judges, and law-enforcement officials. A completion document is awarded to students who have completed 10 courses. In addition, students may choose paralegal studies as a primary concentration in a first or a second bachelor's degree. Students in either program receive

information about prospects for positions as legal assistants in government and in private firms in the Baltimore/Washington area. For further information, call 301-985-7733.

## Nuclear Science Program

University College, working with a consortium of nuclear utilities and the Department of Engineering at the University of Maryland College Park, has developed a degree program to improve the qualifications of personnel in the nuclear-power industry. Since 1984, the personnel of participating nuclear utilities have had the opportunity to earn a bachelor's degree with a primary concentration in nuclear science by combining self-paced, multimedia instruction with independent study at the sites where they work. Students in this program are assigned to faculty members, who guide them via telephone and computer conferencing and during site visits. For further information, call 301-985-7881.

## Institute for Gerontological Practice

The Institute for Gerontological Practice offers comprehensive, high-quality training to people who work in senior centers or who offer other direct services to older adults, to administrators of such programs, and to people interested in entering the field. The summer program addresses the needs of gerontological practitioners employed in various situations:

- Agencies and state units on aging
- Recreation departments
- Nutrition projects
- Nursing homes
- *Adult day care
- Hospice care
- Housing programs
- Municipal governments
- For further information, call 301-405-2543.

## Servicemembers Opportunity College

University of Maryland University College is a designated four-year Servicemembers Opportunity College (SOC), providing opportunities for men and women serving in the armed forces to complete educational programs by means of various modes of instruction scheduled at times appropriate to their duty assignments. The SOC institutions have also developed a series of common curricula that correspond to Army and Navy career specialties and lead to associate's degrees (SOCAD and SOCNAV-2 programs) and bachelor's degrees (SOCNAV-4 programs). The SOC concept itself was developed jointly by educational representatives from each of the armed services, from the U.S. Department of Defense, and from 13 of the nation's leading associations of higher education.

## Head Start Resource and Training Center

The Head Start Resource and Training Center provides training and technical assistance for Head Start programs in the nation's capital and five nearby states. The organization has several branches. The Region III Resource Center serves the components that cover administration, data management, education, parental involvement, and social services. A separate unit, the National Data Management Project, provides automation support to Head Start programs and to their providers of training and technical assistance nationwide. Resources offered include an electronic bulletin board, conferences and workshops, and handbooks and manuals.

An index to publications, a guide to the audiovisual lending library, and a list of workshops are available. For further information, call 301-985-7840.

## Institute for Research on Adults in Higher Education

The Institute for Research on Adults in Higher Education (IRAHE) monitors methodologies and programs that aim to facilitate learning by adults in colleges and universities. IRAHE is currently implementing two programs, the Diverse Students Program (DSP) and the Effectiveness in Learning Program (ELP).

DSP helps University College and partner institutions increase enrollments of students of color and enhances the educational successes of these students once enrolled. Four other senior colleges

UNIVERSITY OF MARYLAND UNIVERSITY COLLEGE

In addition, students must take the capstone course, IFSM 495 Systems Engineering (3), now under development. Students can begin working toward a specialization by pursuing the other course requirements specified above, until IFSM 495 is offered.

### Computer Applications

The discipline of computer applications does not correspond to a primary concentration, nor does it correspond to a specific career field. Courses in this curriculum (designated CAPP) focus on evaluating the effects of computers on society and preparing students to investigate the applications of computers and computerized technologies in various specific fields, such as education, government, social sciences, and management.

For students who have no experience with computing, CAPP 103 or IFSM 201 is appropriate. After completing either of these introductory courses, students may take other courses in computer applications, either for their own interest or as part of a secondary concentration in computer studies. For broader or deeper knowledge of computing, students should consider the curricula of the other three computer disciplines.

### Computer Studies

A primary or secondary concentration in computer studies consists of an interdisciplinary examination of computer technology from various perspectives. With the assistance of an undergraduate academic advisor, the student designs a sequence of logically grouped courses in computer-related topics. Concentrations in computer studies may be composed of courses from the disciplines of computer and information science, computer science, and information systems management.

A primary or secondary concentration in computer studies (which does not correspond to a discipline) allows the student to combine courses from more than one computer-related discipline according to the students particular needs and interests. The primary concentration requires a minimum of 24 semester bouts (including at least 15 semester. hours of upperlevel credit), consisting of courses in computer science (courses designated CMSC), information systems management (courses designated IFSM), and computer and information science (courses designated CMIS). In designing an academic program, students should remember to include the lower-level courses that are prerequisites for the upperdevel courses they intend to take.

### CONCENTRATIONS IN SOCIAL SCIENCES

A primary concentration in the social sciences (behavioral and social sciences, criminology/criminal justice, economics, government and politics, psychology, sociology, and sociology/ anthropology) requires at least one 3-semester-hour course covering statistics. Courses from the list on p. 36 satisfy this requirement.

### PARALEGAL STUDIES DOCUMENT AND CONCENTRATION

Students interested in paralegal studies may complete a document with a 10-course sequence of four required courses and six elective courses in paralegal studies (designated PLGL), plus an additional 30 semester hours of general education courses. Paralegal studies may also be chosen as a primary concentration for a bachelor's or second bachelor's degree. Paralegal studies courses are offered in the traditional classroom setting, as well as through the independent learning format.

### Document in Paralegal Studies

A document is awarded upon successful completion (grade of C or better) of 10 courses in the following sequence:

1. Four required courses (to be taken in order):

    | | |
    |---|---|
    | PLGL 101 | Introduction to Law for the Paralegal (3) |
    | PLGL 200 | Techniques of Legal Research (3) |
    | PLGL 201 | Legal Writing (3) |
    | PLGL 204 | Legal Ethics/Law-Office Systems (3) |

2. One prerequisite course, chosen from one of the five areas of specialization listed below.

3. Three elective courses in the chosen area of specialization.

4. Two more elective courses, chosen from any area of specialization.

**UNIVERSITY OF MARYLAND UNIVERSITY COLLEGE**

Students earning a document must also satisfy an English requirement by completing ENGL 101 or its equivalent with a grade of C or better. In addition, students must have 30 semester hours of general education courses.

**Specializations Commercial law**

**1. Prerequisite:**

| | |
|---|---|
| PLGL 340 | Contract Law (3) |

**2. Electives:**

| | |
|---|---|
| PLGL 343 | Real-Estate Transactions (3) |
| PLGL 360 | Computer Application in the Legal Environment (3) * |
| PLGL 363A | Computer-Assisted Litigation Support (3) * |
| PLGL 400 | Advanced Legal Research (3) * |
| PLGL 401 | Advanced Legal Writing (3) * |
| PLGL 411 | Consumer-Protection Law (3) * |
| PLGL 434 | Government Contracts (3) * |
| PLGL 442 | Commercial Transactions (3) |
| * PLGL 450 | Bankruptcy Law (3) * |

**Family law**

**1. Prerequisite:**

| | |
|---|---|
| PLGL 315 | Domestic Relations (3) |

**2. Electives:**

| | |
|---|---|
| PLGL 312 | Torts (3) |
| PLGL 316 | Estates and Probate (3) |
| PLGL 325 | Litigation (3) * |
| PLGL 340 | Contract Law (3) * |
| PLGL 343 | Real-Estate Transactions (3) * |
| PLGL 360 | Computer Application in the Legal Environment (3) * |
| PLGL 363A | Computer-Assisted Litigation Support (3) * |
| PLGL 400 | Advanced Legal Research (3) * |
| PLGL 401 | Advanced Legal Writing (3) * |
| PLGL 411 | Consumer-Protection Law (3) |

**Government practice**

**1. Prerequisite:**

| | |
|---|---|
| PLGL 330 | Administrative Law (3) |

**2. Electives:**

| | |
|---|---|
| PLGL 322 | Evidence (3) * |
| PLGL 325 | Litigation (3) * |
| PLGL 360 | Computer Application in the Legal Environment (3) * |
| PLGL 363A | Computer-Assisted Litigation Support (3) * |
| PLGL 400 | Advanced Legal Research (3) |
| PLGL 401 | Advanced Legal Writing (3) * |
| PLGL 431 | Government Information Practices (3) |
| PLGL 432 | Environmental Law (3) |
| PLGL 434 | Government Contracts (3) |

**Litigation**

**1. Prerequisite:**

| | |
|---|---|
| PLGL 325 | Litigation (3) |

**2. Electives:**

| | |
|---|---|
| PLGL 223 | Investigative Techniques (3) |
| PLGL 312 | Torts (3) * |
| PLGL 320 | Criminal Law and Procedures (3) |
| PLGL 321 | Economic-Crime Investigation (3) |
| PLGL 322, | Evidence (3) |
| PLGL 340 | Contract Law (3) * |

UNIVERSITY OF MARYLAND UNIVERSITY COLLEGE

| | |
|---|---|
| PLGL 360 | Computer Application in the Legal Environment (3) * |
| PLGL 363A | Computer-Assisted Litigation Support (3) * |

**Tax law**
**1. Prerequisite:**

| | |
|---|---|
| PLGL 350 | Income-Tax Law (3) |

**2. Electives:**

| | |
|---|---|
| PLGL 322 | Evidence (3) * |
| PLGL 325 | Litigation (3) * |
| PLGL 330 | Administrative Law (3)* |
| PLGL 340 | Contract Law (3) * |
| PLGL 351 | Pension Law (3) |
| PLGL 360 | Computer Application in the Legal Environment (3) * |
| PLGL 363A | Computer-Assisted Litigation Support (3) * |
| PLGL 450 | Bankruptcy Law * |

**Concentration in Paralegal Studies**

The requirements for a concentration in paralegal studies differ from those for a document. Students seeking a degree (instead of or in addition to a document) should consult an undergraduate academic advisor to be sure of meeting all the requirements.

* Recommended to complete this area of specialization.

# School of Undergraduate Studies

## Certificate in Paralegal Studies

**Also available online**

The paralegal studies certificate focuses on the legal concepts, procedures and skills used in a wide variety of legal environments. The program addresses the organization, functions and processes of institutions in the U.S. legal system, roles and issues in the paralegal field, legal ethics and selected specialty areas. The curriculum emphasizes important skills, including legal analysis, communication, legal research, computer competence, legal drafting, investigation, organization and specialized legal skills. With appropriate choice of courses, this certificate may be completed while pursuing the Bachelor of Science in legal studies. (However, students may not pursue the paralegal studies certificate within the associate of arts curriculum in legal studies.) No more than 12 credits in certificate courses may be earned through transfer or prior-learning credit.

**Total Credits: 60**

**General education and other college coursework (36)**

This requirement may be fulfilled through transfer credit, and up to 30 credits may be earned through credit by examination or prior-learning portfolio credit. Total must include 18 credits in general education courses covering at least three different disciplines and WRTG 101/101X (unless the student already has earned an associate's or bachelor's degree before taking the first legal studies course). No more than six 1-credit courses may be applied toward this certificate.

**Note:** Courses may be applied to only one certificate; some prerequisites may need to be fulfilled before beginning certificate courses.

**Four required legal studies courses:**

- LGST 101 - Introduction to Law (3)
- LGST 200 - Techniques of Legal Research (3)
- LGST 201 - Legal Writing (3)
- LGST 204 - Legal Ethics (3)

**A general practice procedure and legal skills elective chosen from the following (3):**

- LGST 320 - Criminal Law and Procedures
- LGST 322 - Evidence
- LGST 325 - Litigation
- LGST 400 - Advanced Legal Research and Analysis
- LGST 401 - Advanced Legal Writing

**A general practice substantive law elective chosen from the following (3):**

- LGST 312 - Torts
- LGST 315 - Domestic Relations
- LGST 316 - Estates and Probate
- LGST 340 - Contract Law
- LGST 442 - Business Organizations

**A supporting elective or electives totaling 3 credits chosen from any LGST course (3)**

A supporting elective or electives totaling 3 credits chosen from any LGST course (3)

UNIVERSITY OF MARYLAND
UNIVERSITY COLLEGE
TENTATIVE EVALUATION AS OF 02/04/93

02/04/93   23:42                                                                                         PAGE   1

PAC/SEQ: FL92/9992
DEGREE: Bachelor of Science                                                        JOE ANDERSON JR
CATALOG EDITION: 9109

                                                                                   ADVISOR : Sharon E. Asani
JOE ANDERSON JR
607 ALBANY LANE ####
FOREST HEIGHTS MD   20745

        This evaluation is provided for advisement only. It is not an official record. Students are responsible for meeting
requirements, and should be aware that a minimum of 120 cumulative hours and a 2.0 GPA overall are required for graduation.

| | COURSES | GRADE | CREDITS | DO NOT TAKE |
|---|---|---|---|---|
| **I.   GENERAL EDUCATION REQ.** | | | | |
| A.   COMMUNICATIONS  9 s.h. | | | | |
|    01  ENGL 101 or equivalent 3 s.h. | remaining credits | | 3.00 | |
|    02  Writing 3 s.h. | remaining credits | | 3.00 | |
|    03  Speech/Writing 3 s.h. | remaining credits | | 3.00 | |
| OVERALL COMMUNICATIONS  9 s.h. | | | | |
|    Applicable Credits :   0.00 | | | | |
|    Remaining Credits :   9.00 | | | | |
| B.   SOCIAL SCIENCES  6 s.h. | | | | |
|    01  Social Science  6 s.h. | remaining credits | | 6.00 | |
| OVERALL SOCIAL SCIENCES  6 s.h. | | | | |
|    Applicable Credits :   0.00 | | | | |
|    Remaining Credits :   6.00 | | | | |
| C.   ARTS & HUMANITIES  6 s.h. | | | | |
|    01  Arts & Humanities  6 s.h. | remaining credits | | 6.00 | |
| OVERALL ARTS & HUMANITIES  6 s.h. | | | | |
|    Applicable Credits :   0.00 | | | | |
|    Remaining Credits :   6.00 | | | | |
| D.   MATH/SCIENCE  9 s.h. | | | | |
|    01  Mathematics 3 s.h. | remaining credits | | 3.00 | |
|    02  Math/Natural Science  6 s.h. | remaining credits | | 6.00 | |
| OVERALL MATH/SCIENCE  9 s.h. | | | | |
|    Applicable Credits :   0.00 | | | | |
|    Remaining Credits :   9.00 | | | | |
| E.   ELECTIVES  35 s.h. minimum | | | | |
|    01  Upper-Level electives | remaining credits | | 9.00 | |
|    02  Any-Level electives | remaining credits | ( 3) | 26.00 | @S1 CCSS 105 |
| | | ( 3) | | @S2 CCSS 234 |
| OVERALL ELECTIVES  35 s.h. minimum | | | | |
|    Applicable Credits :   0.00 | | | | |
|    Remaining Credits :   35.00 | | | | |

UNIVERSITY OF MARYLAND
UNIVERSITY COLLEGE
TENTATIVE EVALUATION AS OF 03/04/93

PAGE  2

PGM/DEG: PLGL/CERL
DEGREE: Bachelor of Science
CATALOG WRITTEN: 9109

ADVISER : Sharon L. Amsel

| | COURSE | | GRADE | CREDITS | DO NOT TAKE |
|---|---|---|---|---|---|
| II. PARALEGAL STUDIES | | | | | |
| A.  PRIMARY CONC.- PLGL   24 s.h. | | | | | |
|   01  Upper-Level PAS   15 s.h. | 0499 | PLGL344 | CONTRACT LAW | B | 3.00 |
| | 0499 | PLGL411 | RESEARCH-MOOT LAW | B | 3.00 |
| | 0499 | PLGL330 | EVIDENCE | B | 3.00 |
| | 0499 | PLGL330 | LITIGATION | C | 3.00 |
| | 0499 | PLGL312 | TORTS | B | 3.00 |
| | | | | | |
|   02  Any-Level PAS   9 s.h. | 9109 | PLGL301 | LEGAL WRITING | B | 3.00 |
| | 0499 | PLGL303 | TYPE OF LEGAL ISSUE | B | 3.00 |
| | 9109 | PLGL303 | INVESTIGATIVE TYPE | C | 3.00 |

OVERALL PRIMARY CONC.- PLGL   24 s.h.
   Applicable Credits :      24.00
   Remaining Credits :        0.00

| III. REAL SECONDARY CONCENTRATION | | | |
|---|---|---|---|
| A.  SECONDARY CONC.- REAL  21 s.h. | | | |
|   01  Upper-Level PAS   15 s.h. | remaining credits | | 15.00 |
|   02  Any-Level PAS   6 s.h. | remaining credits | | 6.00 |

OVERALL SECONDARY CONC.- REAL   21 s.h.
   Applicable Credits :       0.00
   Remaining Credits :       21.00

| | RESIDENT | TRANSFER |
|---|---|---|
| Credits in PAS | 24.00 | 0.00 |
| Credits in PGM/CONC | 24.00 | 2.00 |

| IV.  B. S. OPTION - PLGL | | | | | |
|---|---|---|---|---|---|
| A.  B.S. OPTION   12 s.h. | | | | | |
|   01  Related Courses  12 s.h. | 9109 | PLGL301 | INTRO TO PARALEGAL | C | 3.00 |
| | 0499 | PLGL384 | LGL STD/LAW OFF STD | C | 3.00 |
| | | | remaining credits | | (  6.00 |

OVERALL B.S. OPTION   12 s.h.
   Applicable Credits :       6.00
   Remaining Credits :        6.00

```
02/04/98  13:40                  UNIVERSITY OF MARYLAND                           PAGE   3
                                UNIVERSITY COLLEGE
                             TENTATIVE EVALUATION AS OF 02/04/98
                                                                           JOE ANYBODY JR
            PRG/MAJ: FLGL/BSBA
            DEGREE: Bachelor of Science
DEGREE EDITION: FY98                                                    ADVISOR : Sharon R. Acati

A.  GRADUATION/DISTRIBUTION REQ.
    01  Any upper-level  48 s.h.
                                    9168  FLGL348     CONTRACT LAW            B    3.00
                                    9168  FLGL411     ENGLISH-PAST LAW        B    3.00
                                    9169  FLGL???     EVIDENCE                B    3.00
                                    9168  FLGL???     LITERATURE              C    3.00
                                    9167  FLGL312     TORTS                   C    3.00
                                                      remaining credits            30.00

OVERALL GRADUATION/DISTRIBUTION REQ.
    Applicable Credits :      15.00
    Remaining Credits  :      30.00

B.  GRAD'N/DIST'N - COMMUNICATIONS
    01  ENGL101 or equivalent  3 s.h.                 remaining credits            3.00

    02  GL Intensive Writing 3 s.h.                   remaining credits            3.00

    03  Writing  3 s.h.                 9189  FLGL301  LEGAL WRITING       B    3.00

    04  Speech/Writing  3 s.h.                        remaining credits            3.00

OVERALL GRAD'N/DIST'N - COMMUNICATIONS
    Applicable Credits :      3.00
    Remaining Credits  :      6.00

C.  GRAD./DIST. REQUIREMENTS
    01  Computer  3 s.h.                              remaining credits            3.00

    02  Natural Science  3 s.h.                       remaining credits            3.00

    04  Historic Content  3 s.h.                      remaining credits            3.00

    05  Global Content  3 s.h.                        remaining credits            3.00
             03                                                                    OR
    06  Foreign Language/Global 6 s.h.                remaining credits            6.00

OVERALL GRAD./DIST. REQUIREMENTS
    Applicable Credits :       0.00
    Remaining Credits 12.00 OR 15.00

COURSES IN PROGRESS:
                                    9298  CCJS135    INTO TO CRIMINOLOGY      3.00
                                    9298  CCJS234    CRIM PROCEDURES          3.00
                                    9298  FLGL375    DOMESTIC RELATIONS       3.00
                                    9298  FLGL401    ADV LEGAL WRITING        3.00


      COMMUNITY COLLEGE CREDITS :  00.00    EXPERIENTIAL LEARNING/EXAMS CREDITS :  00.00
      STANDARDIZED CREDIT BY EXAM :  00.00    VOCATIONAL/TECHNICAL CREDITS :  00.00
      COOPERATIVE EDUCATION CREDITS :  00.00           TOTAL PASS/FAIL CREDITS :  00.00

                     UNIVERSITY COLLEGE CREDITS :  30.00
                     TRANSFER CREDITS          :  60.00

                      TOTAL REMAINING CREDITS :  90


                        ** AUDIT COMMENTS **

    PLEASE NOTE that this is a TENTATIVE evaluation. I can't run this as an
    official evaluation because we do not have your high school records. I have
    enclosed a transcript request form for you to use. As soon as we receive this
    transcript, I will make your evaluation official.

    Also, please note that you need to take ENGL 101 as soon as possible. We
    require students who are pursuing a bachelor's degree to take ENGL 101 within
    their first 15 semester hours, and you are already past that point. Call 985-
    7800 for English placement test information.

    If you have questions about your bachelor's degree requirements, please come
    in to see an advisor or contact me in writing.
```

Good luck with your studies.

**** END OF AUDIT REPORT ****

# EXHIBIT 3

On Wed, 4 Feb 2009 12:38:47 -0500, "William W Sondervan"
<WSondervan@umuc.edu> wrote:

Simply stated, yes!

Dr. William W Sondervan
Professor and Director
Criminal Justice, Investigative Forensics and Legal Studies
University of Maryland University College
240 582 2868

-----Original Message-----
From: Joe Johnson [mailto:joe.johnson@namgt.com]
Sent: Wednesday, February 04, 2009 12:38 PM
To: William W Sondervan
Subject: RE: Paralegal Studies Program


Dr. Sondervan,

I guess to make my question a little more clearer I should ask: if I
wanted to pursue a career or occupation as a Paralegal, is your
Paralegal program specifically intended to provide students with the
specific training that is necessary to pursue a career or occupation as
a Paralegal in the legal field with a certificate or BS degree?

On Wed, 4 Feb 2009 12:19:28 -0500, "William W Sondervan"
<WSondervan@umuc.edu> wrote:

I guess I don't understand your question?? It prepares you to be a
paralegal. It also teaches you how to write, use a computer and that
goes with it. The entire program is on-line if you want to look it up.

Dr. William W Sondervan
Professor and Director
Criminal Justice, Investigative
Forensics and Legal Studies
University of Maryland University College
240 582 2868

-----Original Message-----
From: Joe Johnson [mailto:joe.johnson@namgt.com]
Sent: Wednesday, February 04, 2009 11:55 AM
To: William W Sondervan
Subject: RE: Paralegal Studies Program


Dr. Sondervan,

Yes, I wanted to know whether UMUC's Paralegal program specifically
tailored to train students to be nothing more than a Paralegal.
Because some programs have studies that offers Paralegal only as a
specialization, and I wanted to be clear that the UMUC's Paralegal
program is specifically intended to train students to be Paralegals
and not as a specialization.

Thanks for your time and cooperation.

On Wed, 4 Feb 2009 11:21:48 -0500, "William W Sondervan"
<WSondervan@umuc.edu> wrote:

The paralegal certificate prepares student to be a paralegal. Is that
your question?


Dr. William W Sondervan
Professor and Director
Criminal Justice, Investigative
Forensics and Legal Studies
University of Maryland University College
240 582 2868

-----Original Message-----
From: Joe Johnson [mailto:joe.johnson@namgt.com]
Sent: Wednesday, February 04, 2009 10:51 AM
To: William W Sondervan
Subject: RE: Paralegal Studies Program


Dr. Sondervan,

Thanks again for your response.

I guess what I wanted to be clear on was whether the Paralegal
Program offered by UMUC a program (not a specialization) that
specifically train students for an occupation or employment with
specific requirements to be a Paralegal?


On Wed, 4 Feb 2009 10:40:48 -0500, "William W Sondervan"
<WSondervan@umuc.edu> wrote:

The certificate is 60 credits and is within the bachelors program.
The get the BS in legal studies it's 120 credits. Many graduates become
paralegals and many go on to law school. Does that make sense?


Dr. William W Sondervan
Professor and Director
Criminal Justice, Investigative
Forensics and Legal Studies
University of Maryland University College
240 582 2868

-----Original Message-----
From: Joe Johnson [mailto:joe.johnson@namgt.com]
Sent: Wednesday, February 04, 2009 10:22 AM
To: William W Sondervan
Subject: RE: Paralegal Studies Program


Dr. Sondervan,

Thank you so much for your response to my email.

Just so that I understand you correctly, the Paralegal program
offered by UMUC is a 60 credit certificate and a BS program that
specifically trains students for an occupation with specific
requirements to be a paralegal?

What is the difference and/or benefit between the 60 credit
certificate and BS Paralegal program offered by UMUC?

On Wed, 4 Feb 2009 09:47:25 -0500, "William W Sondervan"
<WSondervan@umuc.edu> wrote:

Joe,
The paralegal program is a 60 credit certificate which is
embedded in the legal studies BS program. You can take it separately or
as part of the BS degree. It's open enrollment so you can just sign up
on-line and it prepares you to be a paralegal. Many of the graduates
become paralegals or go on to law school. Hope that answers your
question?



Dr. William W Sondervan
Professor and Director
Criminal Justice, Investigative
Forensics and Legal Studies
University of Maryland University College
240 582 2868

-----Original Message-----
From: Joe Johnson [mailto:joe.johnson@namgt.com]
Sent: Wednesday, February 04, 2009 9:28 AM
To: William W Sondervan
Subject: Paralegal Studies Program


Dear Dr. Sondervan,

I have a couple of questions regarding UMUC's Paralegal Studies
Program.

I need to know whether the Paralegal program offered by UMUC is a
Degree or Certificate Program and the requirements for obtaining
enrollment in the Program. In addition, I need to know whether the
Paralegal Program offered by UMUC specifically and exclusively
train students to be Paralegals and what does completion of the
Paralegal Program permit a student to do as far as employment is
concerned.

Thank you in advance for your assistance.

# EXHIBIT 4

 **MAIL** Classic

**Chat session.**                                                          Wednesday, February 4, 2009 8:24 AM

From: "*UMUC _CCSupport" <UMUC_CCSupport@technisource.com>
   To: "Johnson531@yahoo.com" <Johnson531@yahoo.com>


Hello Joe,

Below is the chat we had:

Cheryl: Hello Joe. My name is Cheryl. How may I help you?
Johnson, Joe: Does the UMUC Paralegal program prepare students to be a paralegals?
Cheryl: Yes it does.
Johnson, Joe: Is the Paralegal program a Degree program?
Cheryl: No, it is a Certificate Program.
Johnson, Joe: What are the requirements for obtaining a Certificate in the Paralegal Program?
Cheryl: You must have a high school diploma and a GPA of at least 2.0.
Johnson, Joe: What does obtaining a Certificate in the Paralegal Program permit a student to do as far as employment is concerned?
Cheryl: At the completion of the Program, you should be able to obtain employment as a Paralegal.
Johnson, Joe: So then as I understand it, the Paralegal Program offered by UMUC specifically and exclusively train students to be Paralegals?
Cheryl: That is correct.
Johnson, Joe: Where can I obtain additional information regarding the UMUC Paralegal Program?
Cheryl: Go to umuc.edu. Click on Academic Programs on the left. Scroll down and click on Undergraduate Certificates. Scroll down and click Paralegal Studies. That will show you what classes you need to take. It will also give you a Program Overview.
Johnson, Joe: What department of UMUC are you with?
Cheryl: We are general information.
Johnson, Joe: Is there a telephone number for the Paralegal Programs branch of UMUC?
Cheryl: The best thing I can tell you is to call 800-888-8682 after 9:30 a.m. Ask to speak with an Undergrad Enrollment Specialist.
Johnson, Joe: Ok. Thank you!
Cheryl: You're welcome. Is there anything else I can help you with?
Johnson, Joe: That is all. Can you email this Chat session to me?
Cheryl: I will email the chat to you. If you have further questions, please feel free to contact me.
Johnson, Joe: Thanks Cheryl, have a good day !
Cheryl: You're welcome. You too.


Cheryl Heberlig
Customer Service Team
University of Maryland University College
info@umuc.edu
www.umuc.edu
800-888-8682

# EXHIBIT 5

# YAHOO! MAIL
Classic

**UMUC Chat**                                                    Thursday, December 24, 2009 9:33 AM

**From:** "*UMUC _CCSupport" <UMUC_CCSupport@technisource.com>
**To:** "JJohnson531@yahoo.com" <JJohnson531@yahoo.com>

Hello Mr. Johnson,

Thank you for contacting UMUC. Below is a copy of our chat for your records.

**Pamela:**
Thank you for contacting UMUC!  My name is Pam.  How may I help you?
**JOHNSON, Joe:**
When I first enrolled at UMUC in the Fall 1993 through the Spring 1996, I had a declared
primary of  Paralegal studies, with a criminal justice secondary.
**JOHNSON, Joe:**
I need to know does the UMUC Paralegal program that I was enrolled prepare students to be
Paralegals
**Pamela:**
The program addresses the organization, functions and processes of institutions in the U.S.
legal system, roles and issues in the paralegal field, legal ethics and selected specialty
areas.
**Pamela:**
The curriculum emphasizes important skills, including legal analysis, communication, legal
research, computer competence, legal drafting, investigation, organization and specialized
legal skills.
**JOHNSON, Joe:**
So, based upon what you have just described does the UMUC Paralegal program train you to be a
Paralegal?

**Pamela:**
Yes, students learn the skills need to become a paralegal.
**JOHNSON, Joe:**
Is the Paralegal program a Degree program or Certificate program?
**Pamela:**
The paralegal program is a certificate program.  The actual degree program that is offered is
called Legal Studies.
**JOHNSON, Joe:**
What is the difference in the Paralegal program that I was enrolled and the Legal Studies
program?
**Pamela:**
For one the ceritificate program requires only 60 credits.  The degree program requires 120
credits and prepares students to enter into law school.
**JOHNSON, Joe:**
With the Paralegal program that I was enrolled, and upon completion of 60-credits I should be
able to obtain employment as a Paralegal, is that correct?
**Pamela:**
Yes, that is correct.
**JOHNSON, Joe:**
And if I were to get an addtional 60-credits on top of the credits I earned in the Paralegal
program, I should be able to earn a degree and enter into law school, is that also correct?

**Pamela:**
That is correct, however you will need to let your advisor know that you intend on switching

over to the degree program.

**JOHNSON, Joe:**
Ok. What are the requirements for completing the Paralegal studies program?

**Pamela:**
http://www.umuc.edu/programs/undergrad/certificates/paralegal_stud.shtml

**Pushed Pamela to: http://www.umuc.edu/programs/undergrad/certificates/paralegal_stud.shtml**

**JOHNSON, Joe:**
Can you give me a few seconds to look at that site you just gave?

**Pamela:**
Sure.

**JOHNSON, Joe:**
In 1993, the course designation for the Paralegal studies program was "PLGL", however, I notice that now it's "LGST", is there a difference?

**Pamela:**
I am sure the classes have changed some since 1993. Did you complete any classes for then?

**JOHNSON, Joe:**
I completed all of the courses in the "Four required legal studies courses", all of the courses in the "general practice procedure and legal skills elective" and three (3) of the courses in the "general practice substantive law elective". I did not. I think the total credits I ended up with were 60.

**Pamela:**
Did you finsih the program?

**JOHNSON, Joe:**
I do not think so.

**Pamela:**
If you completed 60 credits then you should have been awarded thd certificate. You may want to contact an advisor at 240-684-2104.

**JOHNSON, Joe:**
If those are all of the courses that are required to obtain the certificate in the Paralegal studies program that I was enrolled, I took all of those courses and should have earned the certificate in the Paralegal studies program when I was enrolled in 1993, is that correct?

**Pamela:**
Yes, as long as you completed all courses with passing grades. Then you would have had to apply for graduation.

**JOHNSON, Joe:**
What are the requirements for graduation?

**Pamela:**
The requirements are that you complete all 60 credits.

**JOHNSON, Joe:**
Ok. What would I had been awarded at the graduation?

**Pamela:**
When students are in their final semester the must apply for their diplom/certificate. Once they application is submitted their is a final degree audit to ensure that all courses have been completed. Then students receive their diploma or certificate.

**JOHNSON, Joe:**
So, I would have been entitled to receive the "certificate" in the Paralegal studies program at the graudation assuming that I completed all 60-credits?

**Pamela:**
Yes, this is why you should contact an advisor to see if you can still receive the certificate.

**JOHNSON, Joe:**
And in order to get a degree to go onto Law School I had to have been enrolled in the "Legal Studies" program and not just the "Paralegal studies" program, is that correct?

**Pamela:**

Yes.
**JOHNSON, Joe:**
Ok..What department of UMUC are you with?
**Pamela:**
I am in the call center and answer general questions about the programs then refer students to the correct department for more information.
**JOHNSON, Joe:**
So, if I had other questions is it possible to call you on the phone instead of on Chat?
**Pamela:**
Yes, at 1-800-888-8682.
**JOHNSON, Joe:**
Ok..Thanks...Can you email this Chat session to me?
**Pamela:**
Yes, would you like me to send it to the email address you provided for this chat?
**JOHNSON, Joe:**
That would be fine...confirm it as: JJohnson531@gmail.com.
**Pamela:**
Yes, that is the email I have.
**JOHNSON, Joe:**
Ok..Thanks Pam, and I hope you have a Merry Christmas and Happy New Year !
**Pamela:**
You're welcome!  Thank you and have a Merry Christmas and a Happy New Year as well!!

Have a great day!

Pamela Zimmerman
Customer Service Team
University of Maryland University College

# EXHIBIT 6



# MARYLAND DEPARTMENT OF JUVENILE SERVICES

# POLICY & PROCEDURE

**SUBJECT:**          **Criminal Background Investigations Policy**
**NUMBER:**          **HR-01-07 (Human Resources)**
**APPLICABLE TO:**   **DJS Employees and Volunteers**
**EFFECTIVE DATE:**  **September 20, 2007**

**Approved: "/s/signature on original copy"**
**Donald W. DeVore, Secretary**

1. **POLICY.**    It is the policy of the Department of Juvenile Services (DJS) to ensure that employees and volunteers who interact with juveniles and/or represent the Department in court proceedings do not possess a criminal background which could pose a danger to youth or negatively impact upon the credibility of the Department.

2. **AUTHORITY.**

   a.    Article 83C § 2-132, Maryland Annotated Code.
   b.    Family Law Article § 5-560 et. seq., Maryland Annotated Code.
   c.    COMAR 12.10.01 et. seq.

3. **DEFINITIONS.**

   a.    *Applicant* means an individual who is under consideration for full or part-time employment with, or to perform services as a volunteer, for DJS.
   b.    *Conditional Employees* means individuals employed or accepted as a volunteer prior to the Department's receipt of the Federal Bureau of Investigation (FBI) or Maryland's Criminal Justice Information System - Central Repository (CJIS-CR) report of findings.
   c.    *Conviction* means an individual has been determined in a court of law to be guilty of an offense.
   d.    *Criminal Background Investigation* means gathering information by submitting fingerprint cards for use in searching FBI records and the information on file in the CJIS-CR to determine if an individual has a criminal record.
   e.    *Direct Care Employee* means an individual whose employment responsibility is the investigation, custody or control of juveniles and youthful offenders who are detained, committed, awaiting placement, adjudicated delinquent or otherwise under the supervision of DJS.
   f.    *Employee* means an individual who is employed full or part time by DJS on a permanent or contractual basis, including provisionary and probationary employees.
   g.    *Mandated Position* means a direct care position subject to the Maryland Correctional Training Commission (MCTC) regulations.
   h.    *Pending Charges* means an individual has not yet been tried in court for an offense with which the individual has been charged.

i.      *Volunteer* means an individual performing services in DJS and receiving no monetary compensation from the Department.

4.   **PROCEDURES.**

a.   **General Procedures.**

(1)   During the initial interview of a direct care applicant, the Office of Investigations and Audits (OIA) investigator will provide the applicant with a record check card and a letter explaining the criminal background report process.

(2)   When a non-direct care applicant is under consideration, the Office of Human Resources (OHR) or Program Manager will provide a packet to the applicant prior to the initial interview with a record check card and a letter explaining the criminal background report process.

(3)   The OHR shall receive CJIS–CR and FBI reports of findings for each employment applicant and employee. The Office of Community Affairs (OCA) shall receive FBI or CJIS-CR reports of findings for each volunteer applicant and volunteer.

(4)   OHR and OCA shall forward all reports of findings to OIA to interpret the report of findings.

(5)   OIA shall interpret the report of findings and advise OHR of the individual's suitability for employment and OCA of the individual's suitability for volunteer positions.

(6)   OHR shall send criminal records for mandated employees to Maryland Correctional Training Commission (MCTC) with the Application for Certification. If MCTC will not issue certification to the individual, the employee shall be terminated from the mandated position.

b.   **Conditional employees.**

(1)   If the Department has not received the FBI or CJIS-CR reports of findings for an individual to be employed or accepted as a volunteer, the individual may be employed or accepted as a volunteer only with the approval of the Secretary or the Secretary's designee; and

(2)   The individual shall sign a statement acknowledging the individual's understanding and agreement that if the FBI or CJIS-CR reports of findings are unacceptable the individual's employment or volunteer status with the Department shall be terminated immediately.

c.   **Disqualifying Criminal Convictions.**

(1)    The applicant, employee or volunteer shall be disqualified if the individual applicant has:

    (i)    A conviction for:
        (a)    Aggravated assault,
        (b)    Murder or manslaughter,
        (c)    Robbery,
        (d)    Arson,
        (e)    Kidnapping,
        (f)    A handgun or weapon-related violation,
        (g)    Rape,
        (h)    A first, second, or third degree sexual offense,
        (i)    Distribution of controlled dangerous substances,
        (j)    Child Abuse; or
        (k)    Two or more felonies not arising from the same incident.

    (ii)    A conviction for an offense that resulted in incarceration when less than ten years have elapsed since the individual was released from incarceration or terminated from parole or probation, whichever last occurred;

    (iii)    A misdemeanor conviction that resulted in incarceration when less than five years have elapsed since the individual was released from incarceration or terminated from parole or probation, whichever last occurred; or

    (iv)    Three or more misdemeanor convictions, except convictions for minor traffic violations, arising out of separate occurrences if at least one misdemeanor was for an offense involving violence or moral turpitude and a term of imprisonment was served for any one offense.

(2)    Convictions for infamous crimes, such as perjury or fraud, which have occurred within the past ten years, may result in the disqualification of applicants or termination of the employee or volunteer.

(3)    A report of a pending charge for an offense may be cause for disqualification of applicants or termination of the employee or volunteer.

(4)    DJS reserves the right to disqualify applicants or terminate the employment of an employee or volunteer with a criminal record not covered by this Policy and Procedure.

(5)    If an employee submits false information on the Application for State Employment or Addendum to the Application for State Employment, such falsification may result in the dismissal of the employee. If a volunteer submits false information on the Volunteer/Student Intern application, this falsification may result in the dismissal of the volunteer.

(6)    For all reports which require the exercise of discretion by the Department in employing, retaining or dismissing an applicant, employee or volunteer, the following procedure shall be observed:

    (i)    Process for an applicant for employment or volunteer.

        (a)    Upon receipt of the reports by OHR, the reports shall be provided to OIA for review, investigation, and recommendation to approve for hire and volunteer status, or disqualification.

        (b)    OHR shall review OIA's recommendation and may consult with the Office of the Attorney General for clarification pertaining to legal issues regarding employment within the Department.

        (c)    The OHR shall present to the Assistant Secretary the report for an applicant for employment, recommendations of OHR, and OIA regarding employment. The Assistant Secretary will consider the duties and responsibilities assigned to the position, as well as any mitigating circumstances pertaining to the individual's selection or disqualification for employment.

        (d)    The Assistant Secretary shall determine whether the individual shall be selected and offered employment, or the individual shall be considered disqualified for employment.

        (e)    The Assistant Secretary shall forward the determination regarding the individual's acceptability for employment or disqualification to the Deputy Secretary. The Deputy Secretary shall acknowledge receipt, and agreement or disagreement with the Assistant Secretary's determination pertaining to the employment of the individual.

        (f)    OCA shall review OIA's recommendation and may consult with the Office of the Attorney General for clarification pertaining to legal issues regarding volunteering within the Department.

        (g)    The OCA shall present to the Assistant Secretary the report for an applicant to volunteer, recommendations of OCA, and OIA regarding volunteering. The Assistant Secretary will consider the duties and responsibilities assigned to the position, as well as any mitigating circumstances pertaining to the individual's selection or disqualification for volunteering.

        (h)    The Assistant Secretary shall determine whether the individual shall be selected and offered an opportunity to volunteer, or the individual shall be considered disqualified to be a volunteer.

        (i)    The Assistant Secretary shall forward the determination regarding the individual's acceptability to be a volunteer or disqualification to volunteer to the Deputy Secretary. The Deputy Secretary shall acknowledge receipt, and agreement

or disagreement with the Assistant Secretary's determination pertaining to volunteering with the Department.

(ii)    Process for Conditional Employee.

(a)    Upon receipt of the reports by OHR the reports shall be provided to OIA for review, investigation, and recommendation to approve the individual for retention or employment termination.

(b)    OHR shall review OIA's recommendation and may consult with the Office of the Attorney General for clarification pertaining to legal issues regarding employment within the Department.

(c)    Where there are issues regarding suitability for employment, OHR shall present to the Assistant Secretary the report for a current employee, recommendations of OHR, and OIA regarding retention or dismissal. The Assistant Secretary will consider the duties and responsibilities assigned to the position, as well as any mitigating circumstances pertaining to the individual's retention or recommendation for termination of employment.

(d)    The Assistant Secretary shall determine whether the individual shall be retained, or the individual's employment shall be recommended for termination.

(e)    The Assistant Secretary shall forward the determination regarding the individual's retention or employment termination to the Deputy Secretary. The Deputy Secretary shall acknowledge receipt, and agreement or disagreement with the Assistant Secretary's determination pertaining to the retention of the individual or recommendation for termination of employment.

(iii)    Process for Conditional Volunteers.

(a)    Upon receipt of the reports by OHR the reports shall be provided to OIA for review, investigation, and recommendation to approve the individual for retention or termination of volunteer status.

(b)    OCA shall review OIA's recommendation and may consult with the Office of the Attorney General for clarification pertaining to legal issues regarding volunteering within the Department.

(c)    OCA shall present to the Assistant Secretary the report for a volunteer, recommendations of OCA and OIA regarding volunteering. The Assistant Secretary will consider the duties and responsibilities assigned to the position, as well as any mitigating circumstances pertaining to the individual's selection or disqualification for volunteering.

(d)    The Assistant Secretary shall determine whether the individual shall be retained as a volunteer, or the individual

shall be considered disqualified to be a volunteer.

(e)   The Assistant Secretary shall forward the determination regarding the individual's acceptability to be a volunteer or disqualification to volunteer to the Deputy Secretary. The Deputy Secretary shall acknowledge receipt, and agreement or disagreement with the Assistant Secretary's determination pertaining to retaining the volunteer or terminating the individual's volunteer status with the Department.

(7)   Each employee's report of findings shall be maintained separately from the individual's personnel file in OHR for the duration of employment. Each volunteer's report of findings shall be maintained separately from other volunteer records in OCA for the duration of their volunteer status.

5.    **DIRECTIVES/POLICIES AFFECTED.**

    a.   Directives/Policies Rescinded -   **03.33 (Criminal Background Investigations)**

    b.   Directives Referenced   **None.**

6.    **LOCAL IMPLEMENTATING PROCEDURES REQUIRED.**   **No.**

7.    **FAILURE TO COMPLY.**

Failure to comply with a Secretary's Policy and Procedure shall be grounds for disciplinary action up to and including termination of employment.

**Appendices – None.**



**MARYLAND DEPARTMENT OF JUVENILE SERVICES
EMPLOYEE STATEMENT OF RECEIPT
POLICY AND PROCEDURE**

---

**SUBJECT:**              Criminal Background Investigations Policy
**POLICY NUMBER:**        HR-01-07 (Human Resources)
**EFFECTIVE DATE:**       September 20, 2007

---

I have received one copy (electronic or paper) of the Policy and/or Procedure as titled above. I acknowledge that I have read and understand the document, and agree to comply with it.


_____          _____
SIGNATURE                                PRINTED NAME


_____
DATE


**(THE ORIGINAL COPY MUST BE RETURNED TO YOUR IMMEDIATE SUPERVISOR FOR FILING WITH PERSONNEL, AS APPROPRIATE.)**

Federal Bureau of Investigation                                    Page 1 of 1



FBIjobs Home
FBI.gov
View Jobs & Apply
- How to Apply

Career Paths
- Special Agents
- Professional Staff

Recruiting Events

Student Center
- Internship Programs
- Other Career
  Opportunities

Life @ FBI
- Who We Are
- Meet Our People
- Benefits at the FBI

Diversity
- Statistics
- Diversity Programs
- Testimonials

Background
Investigation
- Disqualifiers
- Drug Policy
- Process
- Forms

Find Out More
- FAQ's
- Find Your Local
  Field Office
- FBI Reserve Service
- Featured Commercials

FBIjobs.gov > Background Investigation

**ALL FBI JOB CANDIDATES UNDERGO A BACKGROUND INVESTIGATION**

The mission of the FBI is vital to the safety and security of our nation and its citizens. Often, our work is very sensitive in nature. Therefore, all FBI positions require at least a Top Secret Security Clearance. How do you obtain such a clearance? Once you have received and accepted a conditional offer of employment, the FBI will initiate an intensive background investigation that you must pass before you can join the FBI. The investigation includes a polygraph examination; a test for illegal drugs; credit and records checks; and extensive interviews with former and current colleagues, neighbors, friends, professors, etc. There are also certain employment requirements that all candidates must meet in order to be eligible for consideration for employment with the FBI. Before applying for any FBI position, please make sure that the FBI Employment Disqualifiers do not apply to you. For details, please use the links listed here.

- FBI Employment Disqualifiers
- FBI Employment Drug Policy
- FBI Background Investigation Process
- FBI Background Investigation Forms

Accessibility | Privacy Policy | Site Map | Equal Opportunity | DOJ | DNI
FBIjobs.gov is an official site of the U.S. Federal Government, U.S. Department of Justice

Federal Bureau of Investigation



FBIjobs Home
FBI.gov
**View Jobs & Apply**
- How to Apply

**Career Paths**
- Special Agents
- Professional Staff

**Recruiting Events**

**Student Center**
- Internship Programs
- Other Career
  Opportunities

**Life @ FBI**
- Who We Are
- Meet Our People
- Benefits at the FBI

**Diversity**
- Statistics
- Diversity Programs
- Testimonials

**Background
Investigation**
- Disqualifiers
- Drug Policy
- Process
- Forms

**Find Out More**
- FAQ's
- Find Your Local
  Field Office
- FBI Reserve Service
- Featured Commercials

FBIjobs.gov > Background Investigation > FBI Employment Disqualifiers

**EMPLOYMENT DISQUALIFIERS**

There are specific elements that will automatically disqualify job candidates for employment with
the FBI. The FBI Employment Disqualifiers are:

- Conviction of a felony
- Use of illegal drugs in violation of the FBI Employment Drug Policy (see the FBI
  Employment Drug Policy for more details)
- Default of a student loan (insured by the U.S. Government)
- Failure of an FBI-administered urinalysis drug test
- Failure to register with the Selective Service System (for males only)

Please note that if you are disqualified by any of the above tests, you are not eligible for
employment with the FBI. All of these disqualifiers are extensively researched during the FBI
Background Investigation Process. Please make sure you can meet FBI employment
requirements and pass all disqualifiers before you apply for an FBI position.

http://www.fbijobs.gov/51.asp

9/21/2009



# United States Secret Service

## BACKGROUND INVESTIGATION PROCESS

The U.S. Secret Service requires each and every employee to be worthy of trust and confidence.

Applicants must favorably complete the background process, which includes, but is not limited to reference checks, employment checks, criminal history checks, credit history, driving history, military checks, polygraph (if applicable), physical examination (if applicable), urinalysis drug test, interviews with supervisors, coworkers, and personal associates.

The U.S Secret Service is serious about having trust and confidence in an individual who is hired into the Agency. Below is a brief list of items that may disqualify a candidate from becoming a U.S. Secret Service employee:

- Deliberate omission, concealment or falsification of relevant facts from any personnel security questionnaire, personal history statement or similar form used to conduct investigations, determine employment qualifications, etc
- Deliberately providing false or misleading information concerning relevant facts to an employer, investigator, security official, competent medial authority or other official government representative
- Currently in default (failed to make payments) on student loan(s) insured by the U.S. Government
- Not paying federal/state taxes or not filing taxes
- Having child support in arrears
- Having any past due debt to include but not limited to repossessions, judgments, foreclosure or any debt that is not included through a bankruptcy agreement
- Being convicted of a felony
- Using illegal drugs during the last three years or while holding a security clearance or position of trust
- Being a member of any foreign or domestic organization, association, movement, group or combination of persons which is totalitarian, fascist, communist or subversive; or which has adopted a policy advocating or approving the commission of force or violence to deny other persons their rights under the Constitution of the United States.

*An Equal Opportunity Employer*

## Search
- » Search the website

Powered by *USA.gov*

## About
- » Home
- » Who We Are
  - Director
  - Deputy Director
  - Special Agents
  - Uniformed Division
  - Support Personnel
- » Our Dual Mission
- » Rowley Training Center
- » History
- » Frequently Asked Questions
- » Student Q&A

## Contact Us
- » Contact Information
- » Field Offices

## Investigations
- » Investigative Mission
- » Criminal Investigations
- » Forensic Services
- » Investigative Support
- » Know Your Money
- » Electronic Crimes Task Force
- » Law Enforcement Resources

## Protection
- » Protective Mission
- » How Protection Works
- » National Special Security Events
- » National Threat Assessment Center

## Press Room
- » Most Wanted
- » Photo Gallery
- » Press Releases
- » Annual Report
- » FOIA
- » Downloads
- » Information Quality

## Business Opportunities
- » Procurement Division (For Vendors)



# Direct Loans

**William D. Ford Federal Direct Loan Program**

May 10, 2010

Joe Johnson, Jr.
2600 Brinkley Road, Apt. 1005
Fort Washington, MD 20744-1908

Account #:

Dear Mr. Johnson:

Thank you for your inquiry regarding your Direct Loan account. Our records show that you have disputed this loan several times over the past five years. Each time, the U.S. Department of Education Federal Student Aid (FSA) has determined that you did not qualify for loan discharge. This includes your claim for False Certification, Disqualifying Status and False Certification, Ability to Benefit. We have enclosed a copy of a letter from FSA dated September 6, 2007 and a copy of the court document dated September 30, 2008, both of which indicate that you are not eligible for discharge. We will continue to hold you fully responsible for repaying your loan.

**How To Contact Us**

- Our Borrower Services Department is available from 8:00AM to 8:30PM Eastern Standard Time, Monday through Friday at 1-800-848-0979.
- Hearing-Impaired individuals who have access to a TDD can call 1-800-848-0983.
- You can also write to us at:
  U.S. Department of Education
  Borrower Services Department
  Direct Loan Servicing Center
  P.O. Box 5609
  Greenville, TX 75403-5609
- You can access your account information on our Web site at: www.dl.ed.gov.

*Remember: Advise us of any changes in name, address, student status, or separation date from school (if applicable). This information can affect the status of your loan.*

Sincerely,

Borrower Services Department
Direct Loan Servicing Center

*Our Mission is to Ensure Equal Access to Education and to Promote Educational Excellence Throughout the Nation*
U.S. Department of Education






**UNITED STATES POSTAL SERVICE**



United States Postal Service®
**DELIVERY CONFIRMATION**™

Joseph Johnson, Jr.
2600 Brinkley Road PH 1005
Fort Washington, MD   20744

0308 3390 0001 9852 2780

Mailing Envelope

**For Domestic and International Use**

United States District Court
Northern District of Texas (Dallas Division)
Civil Clerk's Office
1100 Commerce Street, Room 1452
Dallas, TX   75242



RECEIVED

NOV 1 6 2010

CLERK, U.S. DISTRICT COURT
NORTHERN DISTRICT OF TEXAS

*Visit us at usps.com*