UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| JOSEPH JOHNSON, JR., | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | CIVIL ACTION NO. 3:10-CV-2333-B |
| | § | |
| AFFILIATED COMPUTER SERVICES, INC., and ACS EDUCATION SOLUTIONS, LLC, | § § § | |
| | § | |
| Defendants. | § | |

## MEMORANDUM OPINION & ORDER

Before the Court is Defendants Affiliated Computer Services and ACS Education Solutions' Motion to Dismiss Second Amended Complaint for Failure to State a Claim (doc. 54), filed April 26, 2011. For the reasons stated below, the Court finds the Motion should be and hereby is **GRANTED**.

### I.

### BACKGROUND

This action involves the denial of discharge of Plaintiff's federally guaranteed student loans. More particularly, this suit involves Plaintiff's attempt to assign responsibility for the denial of discharge directly to the servicer of his loans, Defendant ACS Education Solutions ("ACSES"), and its parent company, Defendant Affiliated Computer Services ("ACS").

In order to fully ascertain the extent and evolution of Plaintiff's claims in this case, it is first necessary to examine the two similar suits Plaintiff has previously leveled against the U.S. Department of Education and ACSES. In 2006, Plaintiff applied for a discharge of his loans,

asserting that the University of Maryland University College had falsely certified his loan application by not reporting his criminal history. *Johnson v. U.S. Dep't of Educ.*, 580 F. Supp. 2d 154, 155 (D.D.C. 2008). Plaintiff's loan application did not ask about his criminal history, and he did not tell. *Id.* The Secretary of Education denied Plaintiff's first application and his appeals. *Id.*

Plaintiff then filed suit against ACSES (a subsidiary of Defendant Affiliated Computer Services, Inc. ("ACS")) and the U.S. Department of Education ("*Johnson I*") under the Administrative Procedures Act. *Id.* at 155. The District Court granted summary judgment to the U.S. Department of Education, which was affirmed by the Court of Appeals. *Id.* at 158, *aff'd without opinion*, No. 08-5468 (D.C. Cir. Apr. 10, 2009). On July 9, 2010, Plaintiff filed a second lawsuit against ACSES and the U.S. Department of Education ("*Johnson II*"). *Johnson v. Duncan*, No. 10-1171 (RMC), 2010 WL 4262050, at *2 (D.D.C. Oct. 29, 2010). Plaintiff's claims against the Secretary were found to be barred by res judicata. *Id.* ACSES was dismissed from those suits because of a lack of subject matter jurisdiction. (*See* Pl.'s Unopposed Mot. Judicial Notice Ex. A (doc. 46-1) (a copy of the Mar. 17, 2011 Minute Order in *Johnson I*); Pl.'s Unopposed Mot. Judicial Notice Ex. B (doc. 46-2) (a copy of the Apr. 5, 2011 Order in *Johnson II*)).

Plaintiff filed the instant action on November 16, 2010, less than three weeks after Defendants' Motions to Dismiss in *Johnson II* were granted. Plaintiff asserts that the Secretary denied his initial request for discharge because the Secretary found no records indicating that he was enrolled in a training program that specifically and exclusively prepared him for employment in law enforcement or as a paralegal. (Pl.'s Am. Compl. 9). Plaintiff further alleges that after he requested reconsideration of his decision, the Secretary advised him to submit any additional documentation to the Defendants for processing. (*Id.* at 10). According to Plaintiff, Defendants were responsible

for processing his requests for discharge of his loans through its servicing contract with the U.S. Department of Education. (*Id.* at 7-8). Plaintiff claims to have submitted additional documentation to the Defendants between December 26, 2009 and June 3, 2010. (*Id.* at 10). Instead of fulfilling that responsibility, however, Plaintiff contends that Defendants failed to process his discharge request or make a determination of the request based on complete loan documentation and applicable guidelines. (*Id.* at 11). To support his assertion, Plaintiff points to a May 10, 2010 letter from the Defendants that states Defendants would continue to hold him fully responsible for repaying his loan. (*Id.*). Based upon these allegations, Plaintiff brings a host of Texas state law causes of action.

Defendant ACS filed its first Motion to Dismiss (doc. 15) on February 4, 2011, twenty-one days after it was served with Plaintiff's Original Complaint (doc. 14). Plaintiff then filed his first Amended Complaint on February 23, 2011, rendering moot the Motion to Dismiss. Defendants then filed a Second Motion to Dismiss on March 1, 2011 (doc. 29). Plaintiff responded on March 17th (doc. 33), and Defendants replied on March 24th (doc. 34). On April 11th, Plaintiff then filed his Motion for Leave to File Plaintiff's Second Amended Complaint (doc. 48). In the Certificate of Conference in this Motion, Plaintiff stated, "Defense counsel has stated that she was not opposed to this motion." In light of Plaintiff's representation to the Court, the Court granted Plaintiff's Motion on April 13th and denied Defendants' Second Motion to Dismiss as moot (doc. 50).

In their now third Motion to Dismiss, Defendants point out that they were in fact opposed to Plaintiff's Motion for Leave to Amend and that Plaintiff has accordingly perpetrated a fraud on the Court. (Defs.' Br. in Supp. of Mot. Dismiss 1 n.1). Plaintiff's only response is that Defendants' failure to raise the issue prior to the Motion to Dismiss "render[s] the [Motion for Leave to Amend] conceded." (Pl.'s Br. in Supp. of Resp. 1 n.1). Plaintiff's conduct in this respect has been

burdensome, frivolous, and reprehensible. This misrepresentation, but one of Plaintiff's many acts of constant, careless disregard of this Court's rules, is but one of the grounds justifying the dismissal of Plaintiff's claims with prejudice.

Defendants filed their third Motion to Dismiss on April 26, 2011 (doc. 53), seeking the dismissal of Plaintiff's claims under Federal Rules of Civil Procedure 12(b)(6). Plaintiff has filed a Response (doc. 56),[1] and Defendants have filed a Reply (doc. 57). Having considered the Parties' briefing and the relevant law, the Court now turns to the merits of its decision.

## II.

## LEGAL STANDARD

Under the Federal Rules of Civil Procedure, a complaint must contain "a short, plain statement of the claim showing that the pleader is entitled to relief." FED. R. CIV. P. 8(a)(2). A plaintiff may support his claim for relief with any set of facts consistent with the allegations in the complaint. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 563 (2007). Rule 12(b)(6) authorizes dismissal of a complaint that fails to state a claim upon which relief can be granted. FED. R. CIV. P. 12(b)(6). In analyzing a Rule 12(b)(6) motion, the Court "accepts 'all well-pleaded facts as true, viewing them in the light most favorable to the plaintiff.'" *In re Katrina Canal Breaches Litig.*, 495 F.3d 191, 205 (5th Cir. 2007)(quoting *Martin K. Eby Constr. Co. v. Dallas Area Rapid Transit*, 369 F.3d 464, 46

---

[1] Plaintiff's Response is 30 pages in length, yet another example of Plaintiff's blatant disregard of the Court's Local Rules. See L.R. 7.2(c) (establishing a 25-page limit on responsive briefs). Over tow weeks after filing his Response and only after Defendants objected to the Brief's length in their Reply did Plaintiff file a Motion for Leave to Exceed Page Limit (doc. 59). While the Court is inclined to deny Plaintiff's untimely motion, the Court will, out of an abundance of caution, consider the entirety of his Response. Accordingly, his Motion to Exceed Page Limits (doc. 59) is hereby **GRANTED**. However, the Court in no way excuses Plaintiff's conduct, and his utter disregard of the Court's Rules is considered in its denial of his claims with prejudice below.


(5th Cir. 2004)). Such a motion should only be granted when the complaint does not include "enough facts to state a clam to relief that is plausible on its face." *Twombly*, 550 U.S. at 570.

A claim is plausible on its face "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009). "The plausibility standard is not akin to a 'probability requirement,' but asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* Thus, to survive a motion to dismiss, "factual allegations must be enough to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555. A complaint that offers "labels and conclusions" or "a formulaic recitation of the elements of a cause of action" will not wurvive a motion to dismiss. *Iqbal*, 129 S. Ct. at 1949. A Rule 12(b)(6) motion to dismiss "is viewed with disfavor and is rarely granted." *Harrington v. State Farm Fire & Cas. Co.*, 563 F.3d 141, 147 (5th Cir. 2009). The Court's review is limited to the allegations in the complaint and to those documents attached to a defendant's motion to dismiss to the extent that those documents are referred to in the complaint and are central to the claims. *Causey v. Sewell Cadilac-Chevrolet, Inc.*, 394 F.3d 285, 288 (5th Cir. 2004).

Because Plaintiff is proceeding *pro se*, the Court liberally construes his Complaint with all possible deference. *See Haines v. Kerner*, 404 U.S. 519, 520 (1972). In addition, a *pro se* plaintiff ordinarily should be given "every opportunity" to state a possible claim for relief. *Hitt v. City of Pasadena*, 561 F.2d 606, 608 (5th Cir. 1998). Thus, before a court dismisses a complaint under Rule 12(b)(6) for failure to state a claim, a *pro se* plaintiff should be given an opportunity to amend. *Barowx v. Scott*, 136 F.3d 1053, 1054 (5th Cir. 1998) (per curiam).

## III.

## ANALYSIS

In their Motion to Dismiss, Defendants advocate the dismissal of the entirety of Plaintiff's claims, claims for tortious interference with statutory rights, tortious interference with contract, negligence, breach of fiduciary duty, breach of contract, unjust enrichment and, intentional infliction of emotional distress. The Court addresses each cause of action in turn.

A.  *Tortious Interference with Statutory Rights*

Plaintiff's cause of action for tortious interference with statutory rights is based on the Defendants' alleged interference with Plaintiff's entitlement to false certification discharge of his consolidated loans. (Pl.'s 2d Am. Compl. 14). Defendants move to dismiss Plaintiff's claim on the grounds that Texas law does not recognize a cause of action for tortious interference with statutory rights and, alternatively, that Plaintiff has failed to plead sufficient facts to make a possibility of recovery plausible. (Defs.' Br. in Supp. of Mot. Dismiss 7). Plaintiff responds that although a claim for interference with statutory rights is not recognized in Texas, federal law does so under either 42 U.S.C. § 1985 or the due process clause of the United States Constitution. (Pl.'s Br. in Supp. of Resp. 9). The Court finds that dismissal is proper on the basis that Plaintiff has failed to state a plausible claim upon which relief can be granted.

Although no Texas court has reached the merits of whether a claim exists for tortious interference with a statutory right, even if such cause of actions exists, a plaintiff must plead and prove the intent element of tortious interference. *See Cole v. Hall*, 864 S.W.2d 563, 567 n. 6 (Tex. App.—Dallas 1993, no writ). Plaintiff's complaint is replete with allegations of Defendants' knowledge of Plaintiff's statutory right to apply for loan discharge. Absent from his complaint or

response, however, is any factual allegation that could plausibly demonstrate intentional interference. Instead, Plaintiff merely relies on the legal conclusion that because Defendants sent him a letter stating he continued to be obligated to pay his loans, Defendants intentionally thwarted his statutory right to be considered for a loan discharge. Though Plaintiff may believe that these facts demonstrate unlawful conduct on the part of Defendants, they are not sufficient to support his bold legal conclusions.

The Court refuses to address any argument raised by Plaintiff concerning 42 U.S.C. § 1985 or federal due process, as neither ground is implicated in his Complaint. Instead, Plaintiff crafted this theory of liability after Defendant's third Motion to Dismiss and his own Second Amended Complaint had been filed. The Court will not permit Plaintiff to once again abuse the litigation process by modifying his claims without notice as he sees fit. Accordingly, Defendants' Motion to Dismiss Plaintiff's claim for tortious interference with a statutory right is hereby **DISMISSED**.

### B.   *Tortious Interference with a Contract*

Plaintiff alleges that as a result of Defendants' interference with the contract between the Plaintiff and the Secretary, the Secretary never considered the additional documentation Plaintiff submitted between December 26, 2009 and June 3, 2010 to support his request for discharge of the consolidated loans. (Pl.'s 2d Am. Compl. 18). Defendants move to dismiss this claim on the grounds that they could not possibly tortiously interfere absent an allegation that (1) the loan consolidation agreement was breached, (2) Defendants induced the Secretary to breach the agreement, or (3) the Secretary did not have a right to deny the Plaintiff's request to discharge the loans. (Defs.' Br. in Supp. of Mot. Dismiss 7-9). In response, Plaintiff argues that even if the Secretary was authorized to deny the request based on the additional supporting documents, there is no indication that the

Secretary would have done so. (Pl.'s Br. in Supp. of Resp. 17). The Court finds that dismissal is proper because a claim for tortious interference with contract fails as a matter of law where a contract obligor simply does what it has a right to do pursuant to a contract.

Under Texas law, a plaintiff proves tortious interference with a contract by establishing: (1) the existence of a contract subject to interference; (2) willful and intentional interference; (3) interference that proximately caused damage; and (4) actual damage or loss. *ACS Investors, Inc. v. McLaughlin*, 943 S.W.2d 426, 430 (Tex. 1997). Moreover, "merely inducing a contract obligor to do what it has a right to do is not actionable interference." *Id.* In this instance, Plaintiff has minimized the fact that pursuant to 20 U.S.C. § 1087(c), the Secretary has full authority to determine whether to discharge student loans. 20 U.S.C. § 1087 (c); *Johnson v. U.S. Dep't of Edu.*, 580 F. Supp. 2d 154, 157 (D.D.C. 2008) ("The Secretary's decision was supported by the record" and "is indeed consistent with the applicable regulation."). Plaintiff contracted with the Secretary for the possibility of his consolidated loans being discharged. Thus, since the Secretary was entitled to deny Plaintiff's request for a discharge, Defendants' conduct may or may not have had any impact on the Secretary's decision. Either way, Defendants cannot be held liable for a mere unfavorable ruling. Having failed to allege a claim of contractual breach, Plaintiff is unable to sustain its claim against Defendants for tortious interference with a contract.

Further, Plaintiff fails to sufficiently allege that Defendants' conduct proximately caused the Secretary to breach its contract. To establish proximate cause, Plaintiff must show that Defendants "took an active part in persuading a party to a contract to breach it." *Amigo Broad., LP v. Spanish Broad. Sys., Inc.*, 521 F.3d 472, 489 (5th Cir. 2008) (citing *Davis v. HydPro, Inc.*, 839 S.W.2d 137, 139 (Tex. App.—Eastland 1992, writ denied)). Here, there is no allegation in the pleadings that

Defendants actively persuaded the Secretary to deny Plaintiffs request. It is difficult to conclude that Defendants are a proximate cause of any breach on the part of the Secretary simply because they knew of the contract and of their responsibility for processing Plaintiff's documentation and paperwork. The Court is unwilling to make such an implausible inference from the Complaint. Thus, Plaintiff has not sufficiently alleged proximate cause, and the claim for tortious interference of contract should be dismissed for failure to state a claim upon which relief can be granted. Accordingly, Defendants' Motion to Dismiss as to Plaintiff's claim for tortious interference with contract is hereby **GRANTED**.

    C.    *Negligence*

Plaintiff also brings a claim for negligence against Defendants. (Pl.'s 2d Am. Compl. 19). Defendants urge the dismissal of the claim, asserting that Plaintiff has failed to plead facts sufficient to support any of the elements of negligence. (Defs.' Br. in Supp. of Mot. Dismiss 10-12). In response, Plaintiff argues that Defendants' duty to process his documentation accurately and according to regulatory guidelines arises from the servicing contract with the U.S. Department of Education and an unnamed Federal statute. (Pl.'s Br. in Supp. of Resp. 20). In addition, Plaintiff alleges that his damages are the loss of the statutory right to have the loans discharged, including reimbursement of any amounts collected on the loans. (Pl.'s Br. in Supp. of Resp. 22).

Under Texas law, a negligence action requires "a legal duty owed by one person to another, a breach of that duty, and damages proximately caused by the breach." *Nabors Drilling, U.S.A., Inc. v. Escoto*, 288 S.W.3d 401, 404 (Tex. 2009). Here, the Court agrees with Defendants that Plaintiff has failed to show Defendants owed him a legal duty that entitles him to relief. Plaintiff asserts three potential duties Defendants owed him: (1) a duty to process the additional documentation and

discharge requests following the required guidelines; (2) a duty to ensure that the complete loan discharge documentation was submitted; and (3) a duty to make a determination of his discharge request based on complete loan discharge documentation and applicable guidelines. (Pl.'s 2d Am. Compl. 22). Plaintiff asserts these duties arise from the Defendants' alleged servicing contract with the U.S. Department of Education. (Pl.'s Br. in Supp. of Resp. 20). However, Plaintiff is not a party to that contract or any other contract with Defendants. In fact, Plaintiff's allegations concern actions and events for which there is no cognizable duty under Texas law. Both state and federal courts applying Texas law admonish against the judicial creation of legal duties. *See Great Plains Trust Co. v. Morgan Stanley Dean Witter & Co.*, 313 F.3d 305, 329 (5th Cir. 2002); *Bren-Tex Tractor Co. v. Massey-Ferguson, Inc.*, 97 S.W.3d 155, 161 (Tex. App.—Houston [14th Dist.] 2003, no pet.). Plaintiff has failed to point the Court to any precedent indicating that his assertions implicate a legal duty previously announced under Texas tort law. Accordingly, Defendants' Motion to Dismiss as to Plaintiff's negligence claim is hereby **GRANTED**.

   D. *Breach of Fiduciary Duty*

  The Court next considers Plaintiff's claim for breach of fiduciary duty. In his Second Amended Complaint, Plaintiff alleges that Defendants breached a fiduciary duty to him by 1) failing to process the additional documentation and discharge requests that he submitted; 2) failing to follow the required regulatory guidelines to facilitate the timely and accurate processing of his request; and, 3) failing to make a determination of Plaintiff's discharge request based on complete loan discharge documentation and applicable guidelines. (Pl.'s 2d Am. Compl. 27). Further, Plaintiff asserts that the Defendants' fiduciary duty arises from the alleged servicing contract because the contract made Defendants agents between Plaintiff and the Secretary. (Pl.'s Br. in Supp. of Resp.

22). Defendants respond that Plaintiff fails to bring forth facts demonstrating an agent or fiduciary relationship between the parties. (Defs.' Br. in Supp. of Mot. Dismiss 17). The Court finds Plaintiff has failed to allege facts sufficient to support his claim.

In order to prevail on a claim for breach of fiduciary duty Plaintiff must establish (1) the existence of a fiduciary relationship; (2) a breach by Defendant of his fiduciary duty to Plaintiffs; and (3) Defendants' breach resulted in injury to the plaintiffs or benefit to the defendant. *Navigant Consulting, Inc. v. Wilkinson*, 508 F.3d 277, 283 (5th Cir. 2007). Whether a party owes a fiduciary duty is a question of law. *Meyer v. Cathey*, 167 S.W.3d 327, 330 (Tex. 2005). Courts impose fiduciary duties on parties based on the special nature of the relationships between such parties. *Johnson v. Brewer & Pritchard, P.C.*, 73 S.W.3d 193, 199 (Tex. 2002). A fiduciary duty arises from certain formal relationships as a matter of law, such as an attorney-client or trustee relationship. *Id.* Courts also recognize an informal fiduciary duty that arises from "a moral, social, domestic or purely personal relationship of trust and confidence." *Associated Indem. Corp. v. CAT Contracting, Inc.*, 964 S.W.2d 276, 287 (Tex. 1998). Under Texas law, agency is also a special relationship that gives rise to a fiduciary duty. *Johnson*, 73 S.W.3d at 200 (stating that an agency is a relationship between two parties where the agent acts on behalf of the principal, and is subject to the principal's control).

Here, Plaintiff has not alleged any facts which give rise to agency between himself and Defendants. Instead, he asks the Court to draw an inference of such relationship based solely on the responsibilities Defendants held under its contract with the U.S. Department of Education. In addition, Plaintiff asserts, without legal support, that administrative type duties are fiduciary duties. The Court sees no reason to infer such a relationship without factual underpinnings or case law that would support such an inference. Plaintiff's speculative and conclusory allegations of the existence

of a fiduciary duty are simply not enough to satisfy Rule 12(b)(6). Plaintiff has failed to provide any set of facts under which the Court can discern any basis for a fiduciary relationship arising under Texas law. Accordingly, Defendants' Motion to Dismiss with respect to Plaintiff's Negligence claim is hereby **GRANTED**.

> E.  *Breach of Contract*

Plaintiff also brings a claim for breach of contract against Defendants for breaching the servicing contract with the Secretary by 1) failing to process his additional documentation and discharge requests that he submitted; 2) failing to follow the required regulatory guidelines to facilitate the timely and accurate processing of his request; and 3) failing to make a determination of Plaintiff's discharge request based on complete loan discharge documentation and applicable guidelines. (Pl.'s 2d Am. Compl. 31). Defendants urge the dismissal of this claim, maintaining that "no contract exists on which Plaintiff may base this cause of action," as the servicing contract was not intended for his benefit. (Defs.' Br. in Supp. of Mot. Dismiss 14-15). Plaintiff does not allege that he entered any contract with Defendants. (*See* Pl.'s 2d Am. Compl. 28-31). Instead, he claims that Defendants owed him certain quasi-contractual obligations. (*Id.* at 31). In his Response, Plaintiff attempts to slightly modify his allegations to say that Defendants owed him these quasi-contractual obligations as a third-party beneficiary of the servicing contract between Defendants and the Secretary. (See Pl.'s Br. in Supp. of Resp. 25-26).

To succeed on a breach of contract claim under Texas law, a plaintiff must demonstrate "1) the existence of a valid contract; 2) performance or tendered performance by the plaintiff; 3) breach of the contract by the defendant; and 4) damages to the plaintiff resulting from the breach." *Lewis v. Bank of Am. NA*, 343 F.3d 540, 545 (5th Cir. 2003)(citing *Palmer v. Espey Hous. & Assocs.*, 84

S.W.3d 345, 353 (Tex. App.—Corpus Christi 2002, pet. denied)). A third party may recover on a contract made between other parties only "when the parties to the contract entered the agreement with the clear and express intention of directly benefitting the third party." *Tawes v. Barnes*, 340 S.W.3d 419, 425 (Tex. 2011) (citing *MCI Telecomms. Corp. v. Tex. Utils. Elec. Co.*, 995 S.W.2d 647, 651 (Tex. 1999)). Courts will not confer third-party benefit status by implication without a "clear and unequivocal expression" of a contracting party's intent to directly benefit a third party. *Id.* Instead, courts will presume the parties contracted only for themselves and not for the benefit of third parties, unless a third party is "clearly and fully spelled out." *Brunswick Corp. v. Bush*, 829 S.W.2d 352, 354 (Tex. App.—Fort Worth 1992, no writ). In other words, a third party cannot enforce a contract where a contract confers only an indirect, incidental benefit on a third party. *Tawes*, 340 S.W.3d at 425.

Nowhere in Plaintiff's Complaint does he either allege that the servicing contract was entered for his benefit or point to any language in that agreement that would indicate he is an intended beneficiary of the agreement. While he might have incidentally benefitted from the agreement, his allegations simply do not rise to the level that would allow the court to plausibly believe that the servicing contract "clearly and fully spelled out" that it was intended for his benefit. *Brunswick Corp.*, 829 S.W.2d at 354. In the absence of any allegation that the contract contains a "clear and unequivocal expression" that Defendants and the Secretary intended to directly benefit Plaintiff, his claims cannot survive Rule 12(b)(6). Accordingly, Defendants' Motion to Dismiss with respect to Plaintiff's breach of contract claim is hereby **GRANTED**.

F.  *Unjust Enrichment*

Plaintiff alleges that Defendants thwarted his entitlement to a discharge of his loans, and that, in doing so, Defendants took an undue advantage of Plaintiff and were unjustly enriched. (Pl.'s Br. in Supp. of Resp. 27). Plaintiff further alleges that Defendants knowingly and willfully interfered for the sole purpose of obtaining a financial gain at Plaintiff's expense. (Pl.'s 2d Am. Compl. 32). Defendants move to dismiss Plaintiff's unjust enrichment claim, contending that they were entitled to receive the compensation earned through their contract with the Secretary. (Defs.' Br. in Supp. of Mot. Dismiss 15-16). Plaintiff does not dispute that fees collected by Defendants were earned pursuant to a contract. (*See* Pl.'s Br. in Supp. of Resp. 26-27). Instead, he argues that the fees are his rightful property and constitute an "unfair advantage" since discharge would have resulted in Defendants no longer earning compensation for servicing Plaintiff's loans. (*Id.*).

Unjust enrichment is a quasi-contractual claim which is based on the absence of an express agreement. *Fortune Prod. Co. v. Conoco, Inc.*, 52 S.W.3d 671, 684 (Tex. 2000). Under Texas law, a claim for unjust enrichment arises when one has obtained a benefit from another by fraud, duress, or the taking of undue advantage. *First Union Nat'l Bank v. Richmont Cap. Partners I, L.P.*, 168 S.W.3d 917, 931 (Tex. App.—Dallas 2005, no pet.). Unjust enrichment may occur where "the person sought to be charged [has] wrongfully secured a benefit or [has] passively received one which it would [be] unconscionable to retain." *See In re Estate of Wallace*, No. 04-05-00567-CV, 2006 WL 3611277, at *3 (Tex. App.—San Antonio Dec.13, 2006, no pet. h.) (quoting *City of Corpus v. S.S. Smith & Sons Masonry, Inc.*, 736 S.W.2d 247, 250 (Tex. App.—Corpus Christi 1987, writ denied)); *RDG Ltd. P'ship v. Gexa Corp.*, No. 14-04-00679-CV, 2005 WL 949171, at *4 (Tex. App.—Houston [14th Dist.] April 26, 2005, no pet.). It is not a proper remedy merely because it might appear

expedient or generally fair that some recompense be afforded for an unfortunate loss to the claimant, or because the benefits to the person sought to be charged amount to a windfall. *Heldenfels Bros. v. City of Corpus Christi*, 832 S.W.2d 39, 42 (Tex. 1992).

Plaintiff has failed to allege facts sufficient to show that Defendants wrongfully obtained a benefit through fraud, duress, or the taking of undue advantage. Plaintiff boldly concludes that Defendants' contractual entitlement to compensation is in fact unjust enrichment. However, this allegation is wholly speculative, as the purported "undue advantage" taken by Defendants is the acceptance of compensation which is fully justified under the Department of Education contract. Failing to allege any other facts to demonstrate undue advantage, Plaintiff's Second Amended Complaint is deficient of factual content that would allow the Court to draw a reasonable inference above a speculative level that defendants wrongfully secured a benefit. *See Iqbal*, 129 S.Ct. at 1949; *Twombly*, 550 U.S. at 563. Accordingly, Plaintiff has not adequately pleaded his unjust enrichment claim, and Defendants' Motion to Dismiss with respect to this claim is hereby **GRANTED**.

G. *Intentional Infliction of Emotional Distress*

Plaintiff also brings a claim for intentional infliction of emotional distress ("IIED"). (Pl.'s 2d Am. Compl. 32). Defendants move to dismiss Plaintiff's IIED claim, contending that Plaintiff has not plead any facts indicating either that Defendants acted intentionally or recklessly, that Defendants' conduct was extreme or outrageous, or that Plaintiff suffered *severe* emotional distress *because of* this conduct. (Defs.' Br. in Supp. of Mot. Dismiss 16-18). Plaintiff responds that he has in fact sufficiently plead his IIED claim. (Pl.'s Br. in Supp. of Resp. 27-29).

To recover under the tort of intentional infliction of emotional distress, a plaintiff must prove that 1) the defendant acted intentionally or recklessly, 2) the conduct was extreme and outrageous,

3) the actions of the defendant caused the plaintiff emotional distress, and 4) the resulting emotional distress was severe. *Walker v. Thompson*, 214 F.3d 615, 628 (5th Cir. 2000); *Standard Fruit and Vegetable Co. v. Johnson*, 985 S.W.2d 62, 65 (Tex. 1998). The tort's recognized purpose is to serve as a gap-filler tort, and it is not meant to circumvent the limitations placed on the recovery of mental anguish damages under more established tort doctrines. *Hoffmann-La Roche Inc. v. Zeltwanger*, 144 S.W.3d 438, 447 (Tex. 2004) ("Where the gravamen of a plaintiff's complaint is really another tort, intentional infliction of emotional distress should not be available."). This means that the tort may be employed for the limited purpose of allowing recovery in those rare instances in which a defendant intentionally inflicts severe emotional distress in a manner so unusual that the victim has no other recognized theory of redress. *Id.* Accordingly, an IIED claim cannot be maintained in situations involving a violation of some other legally recognized interest, even if such violation ultimately results in emotional distress. *Id.* In other words, an IIED claim cannot be maintained if it is aimed at addressing the same type of wrong that a statutory remedy or common-law remedy was designed to cover. *Id.* at 448; *Creditwatch, Inc. v. Jackson*, 157 S.W.3d 814, 815-17 (Tex. 2005) (finding a plaintiff cannot bring a claim against employer for intentional infliction of emotional distress where the plaintiff could rely on a statutory provision or other recognized tort claim against his employer based on the same conduct).

In this case, Plaintiff's IIED claim is based on the identical conduct that forms the basis of his common law claims. All claims are based on Plaintiff's allegations that Defendants failed to process paperwork, did not make a determination of Plaintiff's discharge request based on the complete documentation submitted, and that Defendants sent the Plaintiff a letter informing him of his continued obligation to pay his loans. Plaintiff's claim is thus preempted by his other common-law

claims. In light of this ruling the Court need not address Defendants' alternative argument that Plaintiff's IIED claim should be dismissed because the conduct he alleges does not rise to the level of extreme and outrageous conduct as a matter of law. *See Sauceda v. Bank of Texas, N.A.*, No. 3:04-CV-2201, 2005 WL 578474, at *3 (N.D. Tex. March 9, 2005). Accordingly, Defendants' Motion to Dismiss Plaintiff's IIED claim is hereby **GRANTED**.

## IV.

## CONCLUSION

For the foregoing reasons, the Court hereby **GRANTS** Defendants' Motion to Dismiss Pursuant to Rule 12(b)(6), and all of Plaintiff's claims are hereby **DISMISSED**. Such dismissal is **with prejudice** in light of the fact that Plaintiff has already had two opportunities to amend his Complaint and that he has continually disregarded and abused the rules of this Court.

The dismissal of a case with prejudice is a drastic remedy to be used only in situations where a lesser sanction will not better serve the interests of justice. *Brown v. Thompson*, 430 F.2d 1214, 1216 (5th Cir. 1970). This case meets the stringent standards laid down for dismissal with prejudice. The Court has already granted Plaintiff leave twice to re-plead his claims against Defendants. It is abundantly clear from Plaintiff's complaint and opposition to the motion that he possesses no additional allegations regarding Defendants that would support plausible claims against the Defendants. *Berry v. Indianapolis Life Ins. Co.*, 638 F. Supp. 2d 732, 742 (N.D. Tex. 2009). Therefore, any attempt to re-plead would be futile, and the Court will not provide Plaintiff more opportunities to burden Defendants and the Court with his frivolous filings and careless violations of local rules.

SO ORDERED.

DATED September 9, 2011

_____
JANE J. BOYLE
UNITED STATES DISTRICT JUDGE